THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEON ELLIOT, SR., Defendant-Appellant.

First District (1st Division)   No. 1—94—1072

Opinion filed August 21, 1995.

---

Rita A. Fry, Public Defender, of Chicago (Lisa S. Ottenfeld, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Ross M. Eagle, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

Leon Elliot, Sr., went to trial before a jury on a charge of residential burglary. He testified. In rebuttal, the State offered and the trial court allowed, over objection, evidence of three prior felony convictions to impeach the defendant's believability. The prior convictions were for burglary, residential burglary, and violation of bail bond.

The defendant contends admission of the prior convictions deprived him of a fair trial.

We hold the trial court was in error when it admitted the prior convictions without stopping to weigh the probative value of the convictions against their potential for unfair prejudice. However, because the evidence against the defendant was overwhelming, and because the other issue raised by the defendant is without merit, we affirm his conviction and sentence.

EVIDENCE AT TRIAL

Davean Brooks, who lived at 9210 South Blackstone in Chicago with her two daughters and three sons, awoke at about 5 a.m. on the morning of July 9, 1993, to find a strange man in her house. As she lay in her bed she heard a noise and saw someone walk past the bedroom door. She got up and walked to her bedroom doorway. From there she saw a man she did not know standing in her kitchen. The man had bushy long hair and was wearing a blue shirt and dark blue (possibly black) pants.

Mrs. Brooks yelled, "Who the hell are you?" The man turned toward Mrs. Brooks, pulled a kitchen chair out to block her path, and then ran out the back door, holding her purse. According to Mrs. Brooks, the purse contained $400 in cash and a $324 cashier's check.

Clarence Brooks, Mrs. Brooks' 38-year-old son, heard his mother's shouts and came into the kitchen. Mrs. Brooks told Clarence that a man had been in the house and had stolen her purse. She described the man to Clarence, who then ran out of the house in search of the man.

After Clarence left, Mrs. Brooks called the police. Within a short time, Clarence brought a man (later identified as defendant) back to the house. Mrs. Brooks confirmed that this was the man she had seen in her home. She searched his pockets and found $400 in his left front pants pocket. Clarence punched the man and then dragged him back to the alley to retrieve the purse.

As Clarence took defendant to find the purse, Mrs. Brooks followed at a distance. On Harper Street, Mrs. Brooks saw a police car responding to her telephone call. The police car stopped and Mrs. Brooks explained to the officers what had occurred. While Mrs. Brooks was speaking to the officers, Clarence and defendant returned

once more, this time with Mrs. Brooks' purse. Mrs. Brooks recovered both her purse and the cashier's check inside. Defendant was handcuffed and taken into custody.

Clarence Brooks testified. About 5 a.m. on the morning of July 9, 1993, he awoke to the sound of his mother's shouts. He ran into the kitchen and learned that a man had been in the home and had stolen his mother's purse. After obtaining a description of the man, Clarence immediately ran out of the house, barefooted, to look for the man.

The streets were deserted. Two blocks from his home, however, Clarence saw a man who fit the description given to him by his mother. This man was exiting the alleyway from Stony Island. Clarence grabbed this man (later identified as defendant) and took him back to the house, where his mother confirmed that he was the man she had seen in her home.

Once Clarence's mother identified defendant as the man they were looking for, Clarence began to punch defendant. His mother searched defendant and found money in his pants pocket. Clarence continued to beat defendant and demanded that defendant show him where he put his mother's purse. Defendant directed Clarence to the alleyway between Harper and Stony Island. Mrs. Brooks' purse was recovered from under a porch.

After recovering the purse, Clarence led defendant back toward his house on Blackstone. On Harper Street Clarence saw police officers speaking with his mother. Defendant was turned over to them.

Officer Stockstill testified that on July 9, 1993, at about 5 a.m., she and her partner responded to a call regarding a burglary. Driving to the area of 9210 South Blackstone, Officer Stockstill noticed Mrs. Brooks on Harper Street and stopped. While speaking with Mrs. Brooks, Clarence Brooks, with defendant in tow, walked toward them. Defendant was wearing a blue shirt and dark blue pants, his face was slightly swollen, blood was trickling from his nose, and he was missing a shoe.

Mrs. Brooks informed the officers that defendant was the man who had broken into her home and stolen her purse. The officers took defendant into custody and placed him under arrest. Because defendant complained that he was having difficulty breathing, he was taken to South Chicago Hospital.

In his defense, Elliot presented three witnesses: Barry Tabas, general manager for Metra Express messenger service, testified that Elliot had been employed by Metra Express as a bike messenger from December 14, 1992, until July 8, 1993. Nacy Antoine, an investigator for the Cook County public defender's office, testified

that he interviewed Mrs. Brooks on October 6, 1993, and she told him that the man who broke into her home had long hair and had been wearing a blue shirt, blue pants and a cap. Finally, Officer Stockstill was questioned regarding the fact that the officer's case report did not indicate that any money or property had been recovered from defendant.

Lastly, Leon Elliot testified in his own defense. On the evening of July 8, 1993, he went to visit a friend who lived at 96th and Yates. He left the friend's home the next morning at 4 a.m. and walked to 95th to catch the "el." He just missed the train, so he went to catch the State Street bus. He just missed that, too, so he took the 95th Street bus to Stony Island. There he got off, intending to catch the Stony Island bus. Because the bus wasn't there, he went to make a phone call. No one answered his call. Then Elliot went into the alleyway to urinate.

Elliot saw a man enter the other end of the alleyway. This man grabbed him and accused him of taking a purse. The man called out "I got him" and then two other men arrived on the scene. The three men beat him up. They searched his pockets and took his watch, his eyeglasses and $8 from his wallet. They dragged him to a house where a woman said that he "looked like the guy."

While at the house, Elliot was told to take off his shoes. He complied. He was then dragged back to the alley, where the three men took turns beating him while the others searched for something. Later, the men dragged him a couple of blocks. A police car drove up to them and then he was taken to the hospital by the police.

Elliot denied going into the Brooks residence or taking Mrs. Brooks' purse. He admitted that he had been wearing a blue shirt that morning, but claimed that he had been wearing black jeans, not dark blue pants.

In rebuttal, the State impeached defendant with three prior felony convictions: a 1983 burglary conviction, a 1989 residential burglary conviction, and a 1990 conviction for violation of bail bond.

The jury found Elliot guilty of residential burglary. He was later sentenced to nine years' imprisonment.

## DECISION

Any discussion of Illinois law concerning the use of prior convictions to attack the believability of a criminal defendant must begin with *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. In that case, a prosecution for unlawful sale of a narcotic drug, the court held it was reversible error to impeach the defendant's credibility with a 21-year-old robbery conviction.

In *Montgomery*, the supreme court said that the provisions of the 1971 proposed draft of Federal Rule of Evidence 609 should be followed in future cases. The portion of the proposed rule relevant to the instant case provides:

> "(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of Nolo Contendere, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." 51 F.R.D. 391 (1971).

The proposed rule injected an element previously missing from judicial consideration of the use of prior convictions. A balance had to be struck. A figurative scale was drawn. On one side of the scale the trial judge was to place the probative value of the prior conviction. That is, the judge must consider the relevance of the prior conviction to an evaluation of the defendant's credibility as a witness. On the other side of the scale, the trial judge was to place all the factors that could result in unfair prejudice to the testifying defendant.

The prior conviction would be excluded where the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

Citing Federal case precedent, the *Montgomery* court set out some of the factors to be used in the weighing process: "the nature of the crime, nearness or remoteness, the subsequent career of the person, and whether the crime was similar to the one charged." *Montgomery*, 47 Ill. 2d at 518.

The importance of the balancing test was underscored in *Montgomery* by citing, at length, the advisory committee comments to the proposed rule. The comments referred to the balancing test as " 'the most significant feature of the rule.' " 47 Ill. 2d at 517, quoting 51 F.R.D. 393 (1971).

The new Federal Rules of Evidence went into effect on July 1, 1975. Rule 609, as enacted, differed in some respects from the proposed rule adopted by *Montgomery*. For example, the balancing test for criminal defendants did not include the word "substantially." It is a simple test—probative value weighed against prejudicial effect. In addition, unlike the proposed rule, the enacted rule does not require any balancing test for crimes involving "dishonesty or false statement, regardless of the punishment." See Fed. Rules Evid. 609(a)(1), (a)(2).

The proposed 1971 Rule 609 adopted by *Montgomery* remains the touchstone for admissibility of a defendant's prior conviction for impeachment purposes in Illinois. Any doubt about the supreme court's commitment to the proposed rule was laid to rest in *People v. Yost* (1980), 78 Ill. 2d 292, 295, 399 N.E.2d 1283:

> "It was not the court's intention that the standards for impeachment announced in *Montgomery* would be changed from time to time to correspond to whatever changes might be subsequently proposed for Federal Rule 609."

In *Yost*, the court reversed a murder conviction because the felonious assault conviction used to impeach the defendant did not come within the strict 10-year time limit established by the proposed rule but not contained in the more flexible enacted rule. See Fed. R. Evid. 609(b).

The decisions since *Montgomery* reflect a broad view of the kinds of prior convictions that may be used to impeach a defendant's believability. For example, prior convictions for rape and attempted murder in a rape and murder case, *People v. Redd* (1990), 135 Ill. 2d 252, 553 N.E.2d 316; two prior convictions for aggravated battery in an aggravated battery case, *People v. Davis* (1990), 193 Ill. App. 3d 1001, 550 N.E.2d 677; prior conviction for deviate sexual assault in a case of aggravated battery of a child, *People v. Powell* (1985), 139 Ill. App. 3d 701, 487 N.E.2d 719; and conviction for heroin possession in a robbery case, *People v. Nelson* (1975), 31 Ill. App. 3d 934, 335 N.E.2d 79. For a more exhaustive list of prior conviction cases, see Justice Steigmann's special concurring opinion in *People v. Kunze* (1990), 193 Ill. App. 3d 708, 729-30, 550 N.E.2d 284.

Misdemeanor theft convictions fall within the "dishonesty" category of proposed Rule 609. The supreme court defined dishonesty to include theft of any type in *People v. Spates* (1979), 77 Ill. 2d 193, 204, 395 N.E.2d 563:

> "There is little doubt but that theft reflects adversely on one's honesty and therefore relates to one's ability to be truthful under oath."

The common thread in the decisions is the existence of at least some kind of indication that the trial judge was aware of his discretion to exclude the prior conviction. More often than not, there was no serious attempt to balance the factors set out in *Montgomery*. See, for example, *People v. Redd* (1990), 135 Ill. 2d 252, 325, 553 N.E.2d 316.

In May of 1994, the Illinois Supreme Court issued a wake up call to trial judges. In *People v. Williams* (1994), 161 Ill. 2d 1, 38-39, the court's review of case law since *Montgomery* revealed "a regression

toward allowing the State to introduce evidence of virtually all types of felony convictions for the purported reason of impeaching a testifying defendant."

*Williams* disapproved the rationale used by some courts when faced with the argument that a felony has no direct relation to credibility. Some courts have said a felony of any type "evinces a disrespect for societal order and thus adversely affects the defendant's veracity; or, stated another way, that prior felonious conduct establishes a disposition to place self-interest ahead of the interest of society, and may suggest a willingness to do so again on the witness stand." *Williams*, 161 Ill. 2d at 39.

There is, said the court, an "increasingly mechanical application of these premises," and it "does not comport with the principles expressed in *Montgomery*." (*Williams*, 161 Ill. 2d at 39.) The focus of *Montgomery*, said the court, "was on crimes which bear upon the defendant's truthfulness as a witness." *Williams*, 161 Ill. 2d at 39.

The *Williams* decision reminds us of the potential dangers that weigh on the unfair prejudice side of the scale. Prior conviction evidence suggests a propensity to commit crime, tending to persuade the jury that, on the basis of his past conduct, the defendant probably committed the crime charged. Or, the jury might be influenced to convict "simply because they feel he is a bad person deserving of punishment." *Williams*, 161 Ill. 2d at 40.

*Williams* refers back to the advisory committee comments to expand on the factors trial judges should use to exercise their discretion when conducting the balancing test: "the nature of the prior crime, the recency or remoteness of its commission, the age and circumstances of the defendant, the extent of his criminal record, whether the crime was similar to the one charged, and the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." *Williams*, 161 Ill. 2d at 38.

*Williams* did not establish any bright line that separates admissible from inadmissible prior convictions for impeachment purposes. It was error in that murder case to allow a voluntary manslaughter conviction to impeach the testifying defendant. The court did not "see the relationship required by *Montgomery* between defendant's conviction and his testimonial credibility in this case." *Williams*, 161 Ill. 2d at 41.

■ We understand *Williams* to establish at least three requirements when a prior conviction is offered to impeach a criminal defendant's believability.

First, the prior conviction must bear on the defendant's truthful-

ness as a witness. Crimes involving deceit, fraud, cheating, or stealing press heavily on the probative value side of the scale. Crimes of violence, on the other hand, " 'generally have little or no direct bearing on honesty and veracity.' " (*Williams*, 161 Ill. 2d at 37, quoting *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936, 940.) That is, if the trial court determines the prior conviction is a pure act of violence, and has no element of dishonest conduct, it should not be placed on the scale at all. Whether crimes falling somewhere between these two distinct categories have sufficient probative value to be placed on the scale will depend on the nature and circumstances of the prior crime. Burglary, for example, has been treated as a crime of dishonesty. (*People v. Burba* (1985), 134 Ill. App. 3d 228, 479 N.E.2d 936.) So has armed robbery. (*People v. Poliquin* (1981), 97 Ill. App. 3d 122, 421 N.E.2d 1362.) On the other hand, when courts have allowed drug convictions for impeachment purposes, the rationale has been the defendant's "disposition to place the advancement of individual self-interest ahead of principle or the interest of society, and such proof may suggest a willingness to do so again on the witness stand." (*People v. Nelson* (1978), 31 Ill. App. 3d 934, 938, 335 N.E.2d 79.) That rationale was discredited in *Williams*.

Second, if the prior conviction qualifies for the balancing test, the trial judge must conduct a meaningful test, placing on the scales the various factors set out in *Williams*. The probative value side of the scale should focus on the defendant's truthfulness as a witness, not on any notions of disrespect for societal order or inclination to place self-interest ahead of the interests of society. Use of a limiting instruction (see Illinois Pattern Jury Instructions, Criminal, No. 3.13 (3d ed. 1992)), while essential once the evidence is introduced, is not part of the weighing process.

Third, trial judges must be especially cautious when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. The danger is that jurors will tend to believe that if he did it before he probably did it this time. " 'As a general guide, those convictions which are for the same crime should be admitted sparingly.' " *Williams*, 161 Ill. 2d at 38, quoting *Gordon v. United States*, 383 F.2d at 940. Also see *People v. Pruitt* (1988), 165 Ill. App. 3d 947, 520 N.E.2d 867. But see *People v. Redd* (1990), 135 Ill. 2d 252, 326, 553 N.E.2d 316 (rape and attempted murder convictions allowed in rape and murder cases where the trial court understood its discretion under *Montgomery*).

So far, *Williams* has meant different things to different appellate courts.

A panel in the fourth appellate district somehow reads *Williams*

as authorizing the "mere fact" procedures set out in Justice Steigmann's special concurring opinion in *People v. Kunze* (1990), 193 Ill. App. 3d 708, 728-36, 550 N.E.2d 284. (See *People v. Taber* (1995), 271 Ill. App. 3d 576, 580, 648 N.E.2d 342.) Put briefly, the "mere fact" approach involves two basic steps: first, the trial judge conducts the required *Montgomery-Williams* balancing test; second, if the prior conviction survives, the jury is told the defendant has been convicted of a felony on a certain date in a certain place, but not the name of the felony. (Exceptions exist for some purely testimonial offenses, such as perjury and obstructing justice.)

Two months after *Taber* was decided, another panel of the fourth district held that all felonies may be used for impeachment, by name, so long as the trial judge conducts the balancing test. (*People v. Maxwell* (1995), 272 Ill. App. 3d 57, 650 N.E.2d 298.) The decision does not mention *Kunze* or *Taber*.

A post-*Williams* decision from the third district found reversible error in the use of a prior drug conviction against a personal injury plaintiff. In *Housh v. Bowers* (1995), 271 Ill. App. 3d 1004, 1007, 649 N.E.2d 505, the court, relying on *Williams*, said: "The touchstone for the admissibility of a prior conviction is the relationship between the crime and the likely truthfulness of the witness."

A panel in the first district has taken the position that *Williams* is restricted to the particular facts of that case. *People v. Fomond* (1995), 273 Ill. App. 3d 1053, 1068 states: "We, therefore, construe *Williams* as holding that a judge may not admit past felonies for the purpose of showing a defendant's propensity to commit a crime." Respectfully, we do not read *Williams* that narrowly. We believe the supreme court had something more in mind when it said: "So long as the *Montgomery* rule remains the law in this State, we cannot countenance its further erosion." *Williams*, 161 Ill. 2d at 41.

We note that the trial judge in *Fomond* apparently used the *Kunze* approach, not allowing evidence of the names of the felony convictions that were used to impeach the defendant. The panel neither approved nor disapproved the procedure. Other first district decisions have declined to adopt the "mere fact" procedure set out in *Kunze* because it does not reflect current law in this State. (See *People v. Chambers* (1994), 258 Ill. App. 3d 73, 92, 629 N.E.2d 606; *People v. Gil* (1992), 240 Ill. App. 3d 151, 163, 608 N.E.2d 197. Also see *People v. Thomas* (1991), 220 Ill. App. 3d 110, 117-18, 580 N.E.2d 1353.) We do not find in *Williams* any approval or disapproval of the "mere fact" procedure.

We turn to the events in this case.

After the defense rested, the State moved to impeach the defen-

dant with evidence of his prior convictions. Within the 10 years before trial, the defendant had been convicted of burglary, residential burglary, and violation of bail bond. We set out the entire record on this subject:

"THE COURT: What is your rebuttal?

MR. VENEZIA (first prosecutor): We have several felony provers on the defendant's background.

THE COURT: What year?

MR. VENEZIA: Beginning of 1989.

THE COURT: '89?

MR. VENEZIA: 1990, violation of bail bond.

THE COURT: What is the '89 one for?

MR. FINLEY (second prosecutor): We have one from April 12th, 1983, a burglary conviction. We also have a certification he was released on April 10th, 1985.

THE COURT: That is a provable.

MR. VENEZIA: 1989, October 11th, September 20th of 1989, finding of guilty on a charge of residential burglary before Judge Durkin.

THE COURT: Second one. Any objection to these?

MS. SZPAJER (Defense counsel): Judge, I would object to the nature of the crime, insofar as the similarity to the crime. I have no objection to the jury being informed that he has three prior felony convictions.

THE COURT: Is there another one here?

MR. VENEZIA: Yes, Judge, violation of bail bond, April of 1990.

THE COURT: All right, the defense objections are overruled. The State may show the provable to affect the credibility."

■ There is no suggestion in the record that the trial judge recognized his obligation to conduct the balancing test required by *People v. Montgomery*. Nor did the similarity of two of the prior convictions to the crime charged cause the trial judge to pause before overruling the defendant's objection. This was the kind of "mechanical application" decried in *Williams*. It was an automatic reflex. The court erred.

We do not suggest any precise formula for the assessing and balancing process that is required. "It must be left to the sensitivity of the trial judge to strike a reasonable balance." Federal Advisory Committee's Note to 1971 proposed Rule 609.

Nor do we mandate any specific format for the conduct of the balancing test. At the least, the record should show the trial court understood and used its discretion under *Williams,* and that it considered the relevant factors on both sides of the scale. (See *People v. Hawkins* (1993), 243 Ill. App. 3d 210, 225, 611 N.E.2d 1069.) A

specific weighing of each factor is not yet required. *People v. Wright* (1991), 218 Ill. App. 3d 764, 578 N.E.2d 1090.

In this case, it would be a simple matter to weigh the defendant's violation of bail bond prior conviction. That offense bears directly on believability, as it demonstrates an indifference to the administration of justice in general and to the specific promise to appear in court. The convictions for residential burglary and burglary, however, carry a substantial potential for unfair prejudice, requiring careful consideration by the trial judge. "If he did it before, twice, he probably did it this time." Not an unreasonable assumption. That, of course, is the problem with the evidence. It distracts the jury from a careful analysis of the facts of the crime charged.

Both sides in the criminal trial bear a particular burden of proof in this matter. The party seeking to use the prior conviction must show it meets the nature and time requirements set out in *Montgomery*. (*People v. Yost* (1980), 78 Ill. 2d 292, 399 N.E.2d 1283.) Then, "the burden of persuasion to demonstrate that the prejudicial effect of such evidence substantially outweighs its probative value falls to the party seeking its exclusion." *People v. Medreno* (1981), 99 Ill. App. 3d 449, 451, 425 N.E.2d 588.

In the instant case, the defense lawyer asked the trial judge to use the "mere fact" procedure, simply informing the jury that the defendant had three prior felony convictions. The failure of the trial judge to respond to that suggestion, while precipitous, was not error.

We have examined the record to determine whether the trial judge's failure to conduct the balancing test requires reversal. We conclude, as the supreme court did in *Williams*, that the verdict likely would not have been any different had evidence of the convictions been rejected. The error was harmless in light of all the evidence.

■ We also have considered the defendant's contention that the trial court erred when it refused to order the defendant's clothing brought from jail. On appeal, the defendant says he wanted to prove he was wearing black jeans, not the dark blue slacks the State's witnesses testified to and the prosecutor argued about.

The pants are not part of the record. Further, the request for a court order came after the defendant had rested and the State had completed its rebuttal. We hold the trial court did not abuse its sound discretion when it refused to order delivery of the pants. *People v. Myles* (1994), 257 Ill. App. 3d 872, 629 N.E.2d 648.

CONCLUSION

Although we find the trial court committed error when it failed

to conduct a balancing test for admission of the defendant's prior convictions, we also find the error was harmless in light of the overwhelming evidence against the defendant. We affirm his conviction and sentence.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.