(No. 88860.

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DERICK A. COX, Appellant.

*Opinion filed April 19, 2001.*

`

McMORROW, J., dissenting.

Daniel D. Yuhas, Deputy Defender, and Lawrence J. Essig, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers and Mary Beth Burns, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE FITZGERALD delivered the opinion of the court:

Following a jury trial in the Champaign County circuit court, the defendant, Derick Cox, was convicted of unlawful possession of a stolen vehicle and sentenced to 15 years' imprisonment. The appellate court affirmed the defendant's conviction and sentence. No. 4—99—0122 (unpublished order under Supreme Court Rule 23). We granted the defendant's petition for leave to appeal. 177 Ill. 2d R. 315(a).

The central issue in this case involves the continuing use of the "mere-fact" method for impeaching a criminal defendant with prior conviction evidence after our opinion in *People v. Atkinson*, 186 Ill. 2d 450 (1999). We reverse the defendant's conviction and remand for a new trial.

## BACKGROUND

On May 23, 1998, a Nissan Pulsar owned by David and Rose Sherer and loaned to their son, Zachary Fisher, a University of Illinois student, disappeared from a student housing complex in Champaign. A week later, the car reappeared in Rantoul, crashed into a construction sign and stopped near a roadside tree. As a Rantoul police officer approached the accident, he noticed the de-

fendant walking toward the car. The defendant saw the officer and ran. The officer and his police dog pursued the defendant into a nearby residence where he was arrested. The defendant was indicted for burglary, criminal damage to property, and unlawful possession of a stolen vehicle. Before trial, the State dismissed the burglary and criminal damage to property counts. A jury deadlocked on the unlawful possession of a stolen vehicle count, and the court declared a mistrial.

The State chose to retry the defendant, and another jury found him guilty of unlawful possession of a stolen vehicle. The court sentenced the defendant to 15 years' imprisonment. The appellate court affirmed the defendant's conviction and sentence. This appeal followed.

## ANALYSIS

The defendant raises four issues in his appeal. We focus initially on the first issue: whether the appellate court incorrectly sanctioned the trial court's use of the "mere-fact" method to impeach the defendant's credibility with his prior felony convictions. Under the mere-fact method, "only the 'mere fact' of the felony conviction is to be brought to the jury's attention, as opposed to informing the jury of the precise offense of which the defendant has been convicted or the circumstances surrounding that prior conviction or both." *People v. Kunze*, 193 Ill. App. 3d 708, 733 (1990) (Steigmann, J., specially concurring). The defendant contends that this court barred mere-fact impeachment in *Atkinson*.

Immediately before trial, defense counsel filed a motion *in limine* to bar all evidence of the defendant's five prior felony convictions: two 1989 theft convictions, a 1990 burglary conviction, a 1994 theft conviction, and a 1996 burglary conviction. Defense counsel argued that these convictions were closely related to the unlawful possession of a stolen motor vehicle charge. According to defense counsel, if the jury heard evidence of these

convictions, it would believe that the defendant had a propensity to commit these types of offenses. The court stated:

"The court always weighs the prejudicial impact of informing the jury about the Defendant's prior convictions against the probative value. And if this Defendant wishes to testify, the jury is going to be told that their duty will be to judge the credibility of the witnesses. And I am of the opinion that it's only fair that. the jury be aware that the Defendant does have prior felony convictions when they weigh his credibility, should he choose to testify.

I will, however, not specifically tell the jury of the burglary convictions and the theft conviction. I will merely tell the jury the Defendant has a prior theft and felony convictions, as opposed to—well, theft, this is a stolen car. I will not even go so far as to say theft. I'm just going to say felony convictions if he's going to be impeached with his prior record."

On direct examination of the defendant, defense counsel asked, "[Y]ou have a couple of prior felony convictions, don't you?" The defendant answered that he did. In a post-trial motion, the defendant asserted that the court erred in allowing evidence of his prior convictions to reach the jury. The trial court denied this motion.

The appellate court held that, despite our decision in *Atkinson*, the trial court did not abuse its discretion in admitting the mere fact of the defendant's prior convictions because the defendant agreed to mere-fact impeachment. No. 4—99—0122 (unpublished order under Supreme Court Rule 23). We, however, see no such agreement on the record. To the contrary, the defendant filed a motion *in limine* asking the court to exclude any evidence of his prior convictions and a post-trial motion reiterating that position. The prior conviction issue was properly preserved for review. See *People v. Enoch*, 122 Ill. 2d 176, 187 (1988).

Before addressing *Atkinson*, we review briefly Illinois

law concerning impeachment of a witness through the use of prior convictions, beginning with *People v. Montgomery*, 47 Ill. 2d 510 (1971). In *Montgomery*, we adopted the 1971 proposed draft of Federal Rule of Evidence 609. *Montgomery*, 47 Ill. 2d at 519. Under this rule, evidence of a prior conviction is admissible for impeachment purposes if (1) the witness' crime was punishable by death or imprisonment for more than one year, or the crime involved dishonesty or false statement regardless of the punishment; (2) the witness' conviction or release from confinement, whichever date is later, occurred less than 10 years from the date of trial; and (3) the danger of unfair prejudice does not substantially outweigh the probative value of the conviction. *Montgomery*, 47 Ill. 2d at 516.[1] This final factor involves a balancing test: probative value versus prejudicial effect. In performing this test, trial courts should consider " 'the nature of the prior crimes, *** the length of the criminal record, the age and circumstances of the [witness], and, above all, the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction.' " *Montgomery*, 47 Ill. 2d at 518, quoting *Luck v. United States*, 348 F.2d 763, 769 (D.C. Cir. 1965). We concluded that the trial court has discretion in conducting this balancing test and determining whether a witness' prior conviction is admissible. *Montgomery*, 47 Ill. 2d at 517-18.

In *People v. Williams*, 161 Ill. 2d 1 (1994), we revisited the *Montgomery* balancing test. We found "a regression

---

[1]Rule 609 ultimately was enacted in a different form. In federal court, the danger of unfair prejudice need not substantially outweigh the probative value of the conviction. See Fed. R. Evid. 609(a)(1). The proposed rule, however, has remained the touchstone for admitting evidence of the defendant's prior convictions in Illinois. See *People v. Elliot*, 274 Ill. App. 3d 901, 907 (1995).

toward allowing the State to introduce evidence of virtually all types of felony convictions for the purported reason of impeaching a testifying defendant." *Williams*, 161 Ill. 2d at 38-39. Noting that trial courts often mechanically applied the balancing test to allow more prior-conviction evidence, we stated, "The *Montgomery* rule does not, however, allow for the admission of evidence of any and all prior crimes. The focus of *Montgomery* was on crimes which bear on the defendant's truthfulness as a witness." *Williams*, 161 Ill. 2d at 39. Trial courts should not tip the balancing test toward probative value simply because all felonies show a disrespect for society and, thus, indicate a willingness to lie on the witness stand. *Williams*, 161 Ill. 2d at 39. More importantly, trial courts should not admit prior-conviction evidence as probative of guilt, rather than credibility. *Williams*, 161 Ill. 2d at 40. We reaffirmed that trial courts, in exercising their discretion to admit evidence of a defendant's prior convictions, should consider the nature of the prior crime, its recency and similarity to the current charge, and the length of the defendant's criminal record. *Williams*, 161 Ill. 2d at 38; accord *People v. Redd*, 135 Ill. 2d 252, 325 (1990). Convictions for the same crime for which the defendant is on trial should be admitted sparingly. *Williams*, 161 Ill. 2d at 38, quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967). *Williams*, however, did not modify *Montgomery*. *People v. Williams*, 173 Ill. 2d 48, 82 (1996).

In the wake of *Williams*, an appellate court panel sanctioned the mere-fact impeachment method if trial courts found the *Montgomery* balancing test leaned toward excluding the prior conviction evidence as unfairly prejudicial. See *People v. Taber*, 271 Ill. App. 3d 576, 580 (1995). Several years later, in another case from the same appellate court district, the propriety of mere-fact impeachment finally reached this court.

In *Atkinson*, the defendant was charged with burglary of a motor vehicle. After the defendant testified at trial, the State sought to present evidence of his two prior burglary convictions for impeachment purposes. Defense counsel objected, arguing the prejudicial effect of these convictions outweighed their probative value. Defense counsel asserted that the jury should learn only that the defendant had two prior felony convictions. The trial court denied defense counsel's request, and the State impeached the defendant with evidence of his two burglary convictions. The jury later found the defendant guilty.

The appellate court reversed and remanded for a new trial, holding the trial court erred in permitting the State to reveal the nature of the defendant's prior convictions. *People v. Atkinson*, 288 Ill. App. 3d 102, 107 (1997). Instead, the appellate court determined that the trial court should have factored the mere-fact method of impeachment into its *Montgomery* balancing test. *Atkinson*, 288 Ill. App. 3d at 107. The jury should have heard only that the defendant had two prior felony convictions. *Atkinson*, 288 Ill. App. 3d at 107.

We reversed the appellate court and reinstated the defendant's conviction. *Atkinson*, 186 Ill. 2d at 451. After reviewing the *Montgomery* balancing test, we declined to adopt the mere-fact method of impeachment. *Atkinson*, 186 Ill. 2d at 458. We noted, "Our case law interpreting *Montgomery* suggests that it is the nature of a past conviction, not merely the fact of it, that aids the jury in assessing a witness' credibility." *Atkinson*, 186 Ill. 2d at 458. Mere-fact impeachment, by eliminating evidence regarding the nature of the prior conviction and, thereby, inhibiting the jury's evaluation of witness credibility, undermines *Montgomery*. *Atkinson*, 186 Ill. 2d at 458. We further noted the potential prejudice to the defendant in using the mere-fact approach:

"Under the mere-fact approach, the jury hears direct proof that the accused has been convicted of a felony, the exact nature of which is excluded from the jury. This bare announcement unavoidably invites jury speculation about the nature of the prior crime. There is a potential danger that the jury would speculate that the defendant was previously convicted of a more serious crime. Consequently, the mere-fact approach may result in unfair prejudice to the defendant arising from jury speculation as to the nature of the prior unnamed crime. Under the *Montgomery* rule, however, there is no potential for speculation by the jury. Moreover, the possibility of resulting prejudice to the defendant from revealing the nature of the prior conviction is controlled by the judicial balancing test set forth in the third prong of *Montgomery*. Under that test, if prejudice to the defendant substantially outweighs the probative value of admitting the impeachment evidence, the prior conviction must be excluded." *Atkinson*, 186 Ill. 2d at 459.

*Atkinson*, which was decided while the defendant's appeal was pending, applies to this case. See *People v. Linder*, 186 Ill. 2d 67, 75 (1999) ("As a general rule, this court's decisions apply to all cases that are pending when the decision is announced, unless this court directs otherwise").

The State attempts to limit our holding in *Atkinson*. The State contends *Atkinson* did not instruct that a trial court could not consider mere-fact impeachment as a means to lessen the prejudicial effect of a defendant's prior convictions within the context of the *Montgomery* balancing test. In *Atkinson*, however, we held that "trial courts *should not* consider the mere-fact method of impeachment." (Emphasis added.) *Atkinson*, 186 Ill. 2d at 461. We find no suggestion in this unequivocal language that a trial court's discretion encompasses mere-fact impeachment. Additionally, the State contends *Atkinson* only governs cases in which a trial court

declined to consider a defendant's request for mere-fact impeachment. Again, we see no such limitation.[2]

Admitting the mere fact of the defendant's prior felony convictions was error. In order to determine whether this evidentiary error was "a material factor in his conviction such that without the evidence the verdict likely would have been different" (*Williams*, 161 Ill. 2d at 42), we turn to the evidence presented at trial and the second issue raised by the defendant: whether the State failed to prove him guilty beyond a reasonable doubt.

"A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In viewing the sufficiency of the evidence, we will not retry the defendant. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). Instead, our inquiry is limited to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); accord *People v. Schmalz*, 194 Ill. 2d 75, 80-81 (2000).

The State called Ira Philbeck as its first witness. Philbeck testified that she was watching television with her two grandsons around 3:30 p.m. on May 30, 1998, when the defendant came to the front door of her house. He looked upset and sweaty from running. The defendant

---

[2]We do not reach the question of whether a defendant can challenge an *Atkinson* violation when he requests or agrees to improper mere-fact impeachment. We note, however, "an accused may not ask the trial court to proceed in a certain manner and then contend in a court of review that the order which he obtained was in error." *People v. Lowe*, 153 Ill. 2d 195, 199 (1992); accord *People v. Payne*, 98 Ill. 2d 45, 50 (1983) (a defendant who invites or acquiesces to the admission of improper evidence cannot complain).

told Philbeck that he had been in a fight and hurt some-
one, though he did not appear injured. He asked to use
the telephone, and she pointed toward her phone. Before
the defendant could place a call, Philbeck saw a police of-
ficer in her driveway and suggested she and the defen-
dant speak with him. The defendant ran down a hallway
and asked Philbeck to hide him. When she refused and
told him to leave, he shut himself in the bathroom. Two
police officers entered the house with a police dog.
Eventually, they arrested the defendant.

Rantoul police officer Sawlaw testified that he
responded to a traffic accident call on May 30, 1998. As
Officer Sawlaw approached the accident scene, he
observed the defendant walking toward a Nissan Pulsar
sitting against a tree. The defendant, wearing a green
hat, stopped in the middle of the road and looked at Of-
ficer Sawlaw, then turned and ran in the opposite direc-
tion. On his radio, Officer Sawlaw learned from another
officer that a small back window on the car was shat-
tered and the steering column was peeled, indicating
that the car had been stolen. With help from his police
dog, Dutch, and witnesses directing him after an African-
American man in a green hat, he tracked the defendant
to Philbeck's house. Officer Sawlaw spoke with Philbeck,
who advised him that the defendant was inside the house.
Dutch began barking at the bathroom door, and Officer
Sawlaw told the defendant, "Come out with your hands
up or you will be bitten." Officer Sawlaw heard glass
breaking from inside the bathroom and another officer
ordering the defendant to stick his arms out the broken
window so he could be handcuffed. The Rantoul chief of
police told Officer Sawlaw to back Dutch away from the
bathroom door. The defendant emerged, handcuffed and
crying; he was taken into custody immediately.

Rantoul Police Sergeant Glenn Williams testified that
he assisted Officer Sawlaw in his pursuit of the defen-

dant. At Philbeck's house, Sergeant Williams discovered the defendant was barricaded in the bathroom, breaking the window. Sergeant Williams ran outside the house and saw a foot protruding from the bathroom window. He ordered the defendant to put his hands out the window so he could be handcuffed. The defendant screamed, "[G]et the dog back," and threatened to cut Dutch with a shard of broken glass. After 10 minutes, the defendant was handcuffed and taken into custody.

Rantoul police officer Charles Smith testified that he received a call that a car accident had occurred and the driver had fled the scene. At an intersection Officer Smith saw a Nissan Pulsar had driven over a construction sign, off the road, and into a tree. He noticed a small back window of the car was broken and the steering column was peeled. He also found two screwdrivers used to start the stolen car on the passenger seat. Officer Smith later joined Officer Sawlaw at Philbeck's house. Inside the bathroom, the defendant was yelling and threatening Dutch. After 10 minutes, the defendant was handcuffed by police officers outside the house, and Officer Smith took him into custody.

Fisher and Rose Sherer testified about the condition of the car before and after it was stolen. Both testified that the defendant did not have permission to drive the car.

Champaign police officer James Clark testified that he processed the car for evidence. He pulled some fingerprints from the car, including a print from the inside of the driver's window. Champaign police officer Charles Claudill testified that the print matched the defendant's right thumb print. Gary Harvey, a forensic scientist at the Illinois State Police lab in Springfield, agreed with Officer Claudill.

The defense called Harold Phipps as its first witness. Phipps testified that he heard a car crash near his house

on May 30, 1998. When he went to investigate the noise, he saw an empty car sitting by a tree and called the police. While waiting for the police, he never clearly saw the driver of the car, but, from his driveway, he may have seen somebody leaving the accident scene. On cross-examination, the State asked Phipps if he told the police that he saw an African-American man wearing a green hat run from the wreck. Phipps stated that he could not remember giving such a statement.

The defendant testified that he was working at the Solo Cup Company on the night the car was stolen. On May 30, 1998, he was painting mobile homes for his cousin. His cousin dropped him off in Rantoul that afternoon. The defendant was socializing with a group of people at an apartment building when he heard a noise and saw a car jump the curb and stop beside a tree. A dark-skinned man with long hair ran from the car to the apartment building and into a nearby apartment. According to the defendant, he and a few acquaintances proceeded to that apartment to ask about the accident. The driver appeared upset and stated that he had lost control of the car. The driver requested a cigarette and told the defendant that he had left a pack in the wrecked car. The defendant wanted a cigarette too, so he agreed to return to the car.

At the car, the defendant could not find any cigarettes, so he went back to the apartment. The driver said the cigarettes were under the seat. The defendant returned again to the car and found a pack of Newports under the passenger seat. According to the defendant, he did not notice the stripped steering column or the screwdrivers on the passenger seat. Walking back to the apartment, the defendant saw a police officer driving toward him. The defendant went to the apartment to alert the driver that the police were in the area, then left the apartment to elude the police because he had an outstanding arrest

warrant for a fight with a friend. After a short walk the defendant started jogging when he saw a police officer with a dog pursuing him. The defendant denied that he ever had possession of the car.

The defendant testified that he went to Philbeck's house. Philbeck let him in, and he asked to use the telephone. The defendant called his cousin for a ride. When he saw Officer Sawlaw and Dutch outside Philbeck's house, he told Philbeck that the police were chasing him in connection with a fight. According to the defendant, Philbeck told him that he could not stay, and she walked to the back of the house to talk with the police. Officer Sawlaw entered the house with Dutch, and the defendant fled to the bathroom. Officer Sawlaw attempted to kick in the door, and the defendant kicked out the bathroom window and grabbed a piece of glass for protection from the dog. Eventually, the defendant stuck his hands out the window and allowed the police to handcuff him. On cross-examination by the State, the defendant testified that he did not realize the police were chasing him regarding the car until after his arrest.

In rebuttal, Officer Sawlaw testified that he interviewed Phipps after the defendant's arrest. Phipps told him that an African-American man in a green hat ran from the wrecked car, walked back toward the car, and ran away from the car again. Officer Smith also testified in rebuttal that he interviewed Phipps when he first arrived at the accident scene. Phipps told him an African-American man in a green hat ran from the wrecked car.

To obtain a conviction for possession of a stolen motor vehicle (see 625 ILCS 5/4—103(a)(1) (West 1998)), the State was required to prove, beyond a reasonable doubt, that the defendant possessed the vehicle, that he was not entitled to possess the vehicle, and that he knew the vehicle was stolen. *People v. Anderson*, 188 Ill. 2d 384, 389 (1999). The defendant never disputed that he

did not have permission to drive the Nissan Pulsar, and the evidence presented at trial was sufficient for the jury to conclude that he possessed the car and that he knew the car was stolen. The evidence, however, was not overwhelming, and the improper mere-fact impeachment evidence may have been a material factor in the jury's decision. *Cf. Williams*, 161 Ill. 2d at 41-42. We remand for a new trial.[3]

Finally, the defendant raises two issues concerning the length of his sentence. These issues are unlikely to recur on retrial, and we decline to address them.

## CONCLUSION

For the reasons we have discussed, we reverse the judgments of the appellate and circuit courts and remand the cause to the circuit court for a new trial.

*Reversed and remanded.*

JUSTICE McMORROW, dissenting:

The circuit court, in the exercise of its discretion, found that the mere-fact method of impeachment was the most appropriate approach in presenting evidence of defendant's five prior felony convictions to the jury. The majority, relying upon *People v. Atkinson*, 186 Ill. 2d 450 (1999), concludes that the circuit court's decision constitutes reversible error.

In *Atkinson*, this court held that, as a matter of law, it is always improper for a circuit court to employ the mere-fact method to impeach a testifying defendant. Justice Rathje and I dissented from this holding. As the dissenting opinion in *Atkinson* explained, "[h]istorically, this court has vested the trial court with great discretion

---

[3]Following *People v. Taylor*, 76 Ill. 2d 289, 309-10 (1979), we make no implication concerning the defendant's guilt which would be binding on retrial. Our finding is intended only to protect the defendant from double jeopardy. *People v. Holloway*, 177 Ill. 2d 1, 12 (1997).

to determine what evidence should be presented at trial." *Atkinson*, 186 Ill. 2d at 464 (Rathje, J., dissenting, joined by McMorrow, J.). In holding that circuit courts are prohibited from considering the mere-fact impeachment method, the *Atkinson* majority unwarrantedly departed from our traditional jurisprudence by "remov[ing] from the trial court the discretion to determine whether or to what extent evidence is admissible." *Atkinson*, 186 Ill. 2d at 472 (Rathje, J., dissenting, joined by McMorrow, J.). I continue to adhere to my position that the decision of whether or to what extent evidence of a prior conviction may be admitted for purposes of impeachment is within the circuit court's sound discretion. It is within the wide discretion traditionally afforded the circuit court to permit the use of mere-fact impeachment if the court determines that it is the most appropriate impeachment method.

For the reasons stated, I respectfully dissent from the opinion of the majority.