2021 IL App (1st) 182246-U

No. 1-18-2246

FIFTH DIVISION
JANUARY 15, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | No. 18 CR 1147 |
| | ) | |
| | ) | Honorable |
| MILES KOYAMA, | ) | Joseph M. Claps and |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judges Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The defendant's conviction for possessing a stolen motor vehicle is affirmed over his arguments that the State neither proved that he possessed a stolen motor vehicle nor corroborated his admission to a police officer.

¶ 2   Following a bench trial, the defendant-appellant Miles Koyama was convicted of possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2016)) and sentenced to boot

camp. He now appeals, arguing that the State failed to prove his guilt beyond a reasonable doubt. We affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4     The defendant was charged by information with knowingly possessing a stolen 2007 Lexus belonging to Katherine Ito.

¶ 5     At trial, Ms. Ito testified that at approximately 2:25 p.m. on January 5, 2018, her silver 2007 Lexus was parked on the street outside her home on the 5700 block of North Talman Avenue, in Chicago. Ms. Ito started the vehicle, locked it with a different key, and left it running while she entered her home for a coat. Approximately two minutes later, she exited her home, saw that the vehicle was gone, and called the police. She had not given anyone permission to take or drive her vehicle.

¶ 6     On January 7, 2018, the police notified Ms. Ito that her vehicle had been found. When Ms. Ito saw the vehicle, it was "crashed," "smoldered," and "very dirty." Ms. Ito did not know the defendant or give him permission to enter or drive her vehicle.

¶ 7     On cross-examination, Ms. Ito stated that she had never seen the defendant before. She did not personally see anyone take her vehicle.[1]

¶ 8     Officer Jesus Delgado testified that, on January 7, 2018, he was on patrol with his partner, Officer Daniel Blackman. Officers Delgado and Blackman were in plain clothes and an unmarked vehicle. At approximately 10:30 p.m., in an alley near the intersection of Foster and Lincoln Avenues in Chicago, Officer Delgado saw a silver 2007 Lexus driving without its lights on.

---

[1]Following Ms. Ito's testimony, the proceedings were continued to another date. The remainder of the case was heard by a different judge, who received the transcript of Ms. Ito's testimony.

Officers Delgado and Blackman read the Lexus' license plate number over their radio and learned it had been reported stolen.

¶ 9    The police officers activated their lights and siren. The Lexus did not stop. They followed the Lexus through the alley and onto Leavitt Street. At one point, Officers Delgado and Blackman drove "side by side" with the Lexus as the Lexus drove on the sidewalk. Using a megaphone, they told the driver to stop. The driver, a male wearing black, was the only occupant in the Lexus. Officers Delgado and Blackman described him over the radio.

¶ 10    The Lexus returned to the same alley where the police officers had originally spotted it and crashed into a parking garage. The driver exited and ran to Foster Avenue. Officer Delgado identified the driver in court as the defendant. Officer Delgado used his radio to transmit the direction of the defendant's flight to other police officers. Officer Blackman pursued the defendant on foot while Officer Delgado drove to Lincoln Avenue, where he saw the defendant running. The defendant was wearing the same clothing that he wore in the vehicle when the police officers first saw him. Other police officers arrested the defendant and transported him to the police station. Officer Delgado notified Ms. Ito that the Lexus had been found and the vehicle was returned to her. She identified it as her own.

¶ 11    On cross-examination, Officer Delgado stated that he and Officer Blackman were parked when the Lexus drove towards them without its lights on. When they pursued the Lexus, Officer Delgado drove while Officer Blackman relayed information over the police radio. Officer Delgado admitted that he did not write in the arrest report that he drove "side by side" with the Lexus, while the Lexus drove on the sidewalk, or that the Lexus had only one occupant, wearing black. After

the defendant crashed and fled the Lexus, soon thereafter, Officer Delgado saw the defendant running on Lincoln Avenue, and he was arrested.

¶ 12    Officer Delgado reviewed body camera footage of the defendant's arrest and admitted that it did not depict the defendant running; however, Officer Delgado stated that the defendant stopped running and walked when officers approached him. Officer Delgado did not know whether the defendant was "out of breath" when he was arrested.

¶ 13    Officer Roberto Verdin testified that he and another officer spoke with the defendant at the police station on January 7, 2018, after advising the defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Officer Verdin asked the defendant about the vehicle he was alleged to have been driving shortly before he was arrested. The defendant stated that "he was walking down the street" but did not remember the name of the street when he saw the vehicle with the ignition on.  He then claimed to have jumped into it and decided to "take it for a joy-ride."

¶ 14    On cross-examination, Officer Verdin stated that he was not present when the defendant was arrested. Officer Verdin later arrived at the scene of the arrest, and all the police officers, including Officer Verdin, had their body cameras activated. However, Officer Verdin was not wearing his body camera when he interviewed the defendant. The defendant's statement to Officer Verdin was not written or recorded, and Officer Verdin did not have the defendant sign a statement. Officer Verdin believed he removed his body camera because he slipped and fell on the way to Lincoln Avenue.  He admitted to having fallen on his hip and that the camera sat on his chest.

¶ 15    The defendant called Officer Blackman to testify. Officer Blackman testified that because the roads were icy, he and Officer Delgado did not exceed 30 miles per hour as they pursued the

Lexus, which allowed them to see inside it. Officer Blackman did not recall how he described the driver over the radio or relaying that there were five occupants in the Lexus.

¶ 16 Officers Blackman and Delgado were approximately 15 feet from the Lexus when it crashed into the parking garage. Officer Blackman did not see the driver exit the Lexus, but Officer Delgado pointed in the direction he saw the driver flee, and Officer Blackman exited the vehicle in pursuit. Officer Blackman ran into the parking garage, but the driver was not there.

¶ 17 Officer Blackman reviewed body camera footage prior to trial, but believed he only watched the footage from his and Officer Delgado's cameras, and not the footage from a camera worn by another officer, Sergeant McDermott.[2]

¶ 18 Defense counsel entered a stipulation to the foundation for Defense Exhibit No. 1, the body camera footage from Sergeant McDermott. The footage was entered into evidence.

¶ 19 In the footage, which is in the record on appeal and includes audio, Sergeant McDermott is driving and receives a radio dispatch regarding the search for a silver 2007 Lexus. At one point, a person on the radio asks how many occupants are in the vehicle, and a voice responds with what sounds like "five." A person on the radio describes the Lexus stopping and the driver exiting and running toward Foster Avenue. The person also states that he attempted to pursue the driver into a parking garage. Sergeant McDermott then meets with other officers, who inform him that the driver has been apprehended elsewhere.

¶ 20 Following arguments, the trial court found that the audio in Sergeant McDermott's body camera footage could be "interpret[ed]" as someone stating that there were five occupants in the Lexus, but that what the court heard, while "confusing," "corroborate[d]" Office Blackman's

---

[2]Sergeant McDermott's first name is not the record.

testimony that he lost the driver when he ran into a garage. The court credited Officer Delgado's identification of the defendant as the driver because Officer Delgado saw the defendant, as well as the clothes he was wearing while Officer Delgado was "very close" to the defendant, and then Officer Delgado identified the defendant when the defendant was stopped by other police officers. The trial court further found that Ms. Ito's description of her vehicle's theft corroborated Officer Verdin's testimony about the statement that the defendant gave at the police station, specifically, that he saw a vehicle "and jumped in and took off." Accordingly, the court found the defendant guilty.

¶ 21    The defendant filed a motion to reconsider or, in the alternative, for a new trial. The court denied the motion and, following a hearing, sentenced the defendant to boot camp.

¶ 22                                    ANALYSIS

¶ 23    We note that we have jurisdiction to consider this matter, as the defendant filed a timely notice of appeal. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. July 1, 2017).

¶ 24    On appeal, the defendant argues that the State failed to prove beyond a reasonable doubt that he possessed a stolen motor vehicle. He first argues that he did not possess the vehicle when he was arrested and that Officer Delgado's identification of him as the driver was unreliable.

¶ 25    "When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 64. It is the province of the trier of fact to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (Internal quotation marks omitted). *Id.* A reviewing court, therefore, will

not retry the defendant, "substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of witnesses," or overturn a conviction "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Id.*

¶ 26    To sustain a conviction for possession of a stolen motor vehicle, the State must show that a defendant (1) possessed a vehicle, (2) was not entitled to possess the vehicle, and (3) knew the vehicle was stolen. 625 ILCS 5/4-103(a)(1) (West 2016); *People v. Cox*, 195 Ill. 2d 378, 391 (2001).

¶ 27    Ms. Ito testified that, on January 5, 2018, she left her silver 2007 Lexus running on the street while she entered her home for a coat, that the vehicle was gone when she returned, and no one had permission to take it. Officer Delgado testified that, on January 7, 2018, he saw the defendant driving a silver 2007 Lexus which had been reported stolen. Officer Delgado observed the defendant while he drove side by side with the Lexus, followed the Lexus until it crashed, and saw the defendant exit the Lexus and run. Officer Verdin testified that the defendant confessed to coming upon a running vehicle, entering it, and driving away. Although that statement was unrecorded, the trial court found Officer Verdin's testimony credible and corroborated by Ms. Ito's description of the circumstances of her vehicle's theft. Here, viewing the evidence in the light most favorable to the State, a rational trier of fact could find that the defendant possessed a stolen motor vehicle.

¶ 28    While the defendant was not in possession of the Lexus when he was arrested, "[i]t is well-settled that a valid conviction may be based on a positive identification by a single eyewitness who had ample opportunity to observe." *People v. Macklin*, 2019 IL App (1st) 161165, ¶ 22. When

evaluating the reliability of identification testimony, Illinois courts consider the factors set out in *Neil v. Biggers*, 409 U.S. 188 (1972). *Id.* They are:

"(1) the witness's opportunity to view the offender at the time of the offense, (2) the witness's degree of attention at the time of the offense, (3) the accuracy of any previous description of the offender by the witness, (4) the degree of certainty shown by the witness in identifying the defendant, and (5) the length of time between the offense and the identification." *Id.*

"The trier of fact must consider all the factors," and no single factor conclusively establishes the reliability of an identification. *Id.*

¶ 29    With respect to the first factor, Officer Delgado testified that he drove side by side with the Lexus, and Officer Blackman testified that they never exceeded 30 miles per hour, which allowed them to see inside the Lexus and observe that it had one male occupant wearing all black. Second, regarding Officer Delgado's degree of attention, he knew the vehicle had been reported stolen and drove side by side with it and attempted to curb it. Once the vehicle crashed, Officer Delgado watched the driver flee on foot and described his direction over the radio. Third, regarding the accuracy of any prior description, while Officer Delgado's description of the driver was limited to the driver's black clothing, he recognized the person being arrested on Lincoln Avenue as the Lexus' driver and saw that the driver was wearing the same clothing. See *People v Thompson*, 2020 IL App (1st) 171265, ¶ 46 (third factor satisfied when witnesses' "initial description was mostly about the shooters' clothing but there was no evidence that it was inaccurate.").

¶ 30    Considering the fourth factor, Officer Delgado was certain of his identification of defendant as the driver both when the defendant was arrested and at trial. See *id.* (factor satisfied

when "no suggestion that the witnesses' certainty ha[d] ever wavered"). While the defendant introduces studies to argue that a witness' degree of certainty has little correlation with the accuracy of an identification, the defendant did not offer any evidence supporting that argument to the trial court and we will not consider them for the first time here. See *People v. Tomei*, 2013 IL App (1st) 112632, ¶¶ 54-56 (finding unpersuasive defendant's argument that level of certainty should be given little weight because the defendant did not offer evidence to that point below); see also *People v. Mehlberg*, 249 Ill. App. 3d 499, 531-32 (1993) (not considering studies cited for first time on appeal because they were "an attempt to interject expert-opinion evidence into the record" that was not subject to cross-examination or considered by trial court). With respect to the last factor, Officer Delgado identified the defendant as the driver of the Lexus when the defendant was stopped on Lincoln Avenue by other police officers, shortly after Officer Delgado saw the defendant flee from the crashed vehicle. Viewing the evidence in the light most favorable to the State, we decline to overturn the trial court's determination that Officer Delgado's identification of defendant was credible. See *Jackson*, 2020 IL 124112, ¶ 64 ("[A] reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of witnesses.").

¶ 31    Next, the defendant argues that, because Officer Delgado's identification is unreliable, there is insufficient evidence corroborating the defendant's statement to Officer Verdin to prove the *corpus delicti* of his offense.

¶ 32    "[I]n criminal proceedings, the State must prove beyond a reasonable doubt two propositions—namely, that a crime was committed, also known as the *corpus delicti*, and that the defendant committed the crime." *People v. Walker*, 2020 IL App (1st) 162305, ¶ 22. "In other

words, the evidence to convict a defendant cannot be sufficient unless there is proof of *corpus delicti* beyond a reasonable doubt." *Id.* ¶ 24.

¶ 33    "Importantly, a confession alone is insufficient to prove the *corpus delicti* of an offense; there must be some corroborating evidence tending to prove that a crime has been committed." *Id.* ¶ 22. "This corroborating evidence need only *tend* to show the commission of an offense," not prove beyond a reasonable doubt that the defendant committed a crime. (Emphasis in original.) *Id.* A reviewing court views the corroborating evidence in the light most favorable to the State. *People v. Pitts*, 2016 IL App (1st) 132205, ¶ 31.

¶ 34    We conclude that there is sufficient independent evidence tending to show the commission of a crime to corroborate the defendant's statement to Officer Verdin. Officer Verdin testified that the defendant told him he entered a running vehicle and drove away. Ms. Ito testified that, on January 5, 2018, she went inside for two minutes while she left her silver 2007 Lexus running and parked on the street, and when she came out of her home, the vehicle was gone. On January 7, 2018, Officers Delgado and Blackman saw a silver Lexus driving without lights in an alley. They learned from its license plate that it had been reported stolen. The officers followed the Lexus until the driver crashed and fled. Officer Delgado identified the defendant as the driver, and, as discussed, we decline to overturn the trial court's determination that this identification was reliable. The Lexus was Ms. Ito's. That evidence tends to show that defendant possessed a stolen motor vehicle. See *Walker*, 2020 IL App (1st) 162305, ¶ 22 (independent evidence of *corpus delicti* need only tend to show commission of crime, not prove crime beyond reasonable doubt). Further, the corroborating evidence makes inapposite the defendant's comparison to *People v. Lesure*, 271 Ill.

App. 3d 679 (1995), in which the defendant was convicted of unlawful use of a firearm by a felon based solely on his admission that he had possessed a firearm. *Lesure*, 271 Ill. App. 3d at 683-84.

¶ 35 Accordingly, we conclude that, viewing the evidence in the light most favorable to the State, a rational trier of fact could find the elements and *corpus delicti* of possession of a stolen motor vehicle beyond a reasonable doubt.

¶ 36                                    CONCLUSION

¶ 37 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 38 Affirmed.