2019 IL App (1st) 161686-U

THIRD DIVISION
December 26, 2019

No. 1-16-1686

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 1330 |
| | ) | |
| ANTHONY TRIPLETT, | ) | Honorable |
| | ) | Kevin Michael Sheehan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County is affirmed; where the trial court admitted evidence of bad acts by defendant, the trial court erred in admitting the fact  of defendant's conviction of those bad acts for purposes of impeachment where defendant was on trial for the same offense; the court's error in admitting the fact of defendant's conviction was harmless in light of overwhelming evidence of defendant's guilt; and the trial court did not abuse its discretion in excluding evidence of other crimes defendant offered to refute the State's *modus operandi* evidence where the other crimes were not sufficiently similar to the charged offense.

¶ 2    Following a jury trial, the circuit court of Cook County convicted defendant, Anthony

Triplett, of first-degree murder for the death of Janice Ordidge.  At the time of defendant's trial

for Ordidge's murder the court had already convicted defendant of first-degree murder for the

death of Urszula Sakowska.  The trial court admitted evidence of the details of Sakowska's

murder in defendant's trial for Ordidge's murder as other crimes evidence. The trial court also admitted the fact of defendant's conviction for Sakowska's murder as impeachment of defendant's credibility. Defendant appeals his conviction for Ordidge's murder on the grounds (1) the probative value of defendant's conviction for Sakowska's murder as evidence of defendant's credibility was outweighed by the prejudicial effect of his recent conviction for a similar crime and (2) the trial court erroneously excluded other crimes evidence defendant sought to admit to show someone else may have committed the murders and rebut the State's other crimes evidence.

¶ 3     For the following reasons, we affirm defendant's conviction and sentence for Ordidge's murder.

¶ 4                                 BACKGROUND

¶ 5     Janice Ordidge was murdered on October 21, 2006. Urszula Sakowska was murdered on December 8, 2006. The defendant was convicted of Sakowska's murder before defendant's trial for Ordidge's murder began. This court affirmed defendant's conviction for Sakowska's murder in a prior appeal. *People v. Triplett*, 2017 IL App (1st) 133175-U.

¶ 6     Before defendant's trial for Ordidge's murder, the State moved to admit evidence of Sakowska's murder to prove, *inter alia*, *modus operandi*. Defendant subsequently filed a motion to admit evidence of the murders of two other victims as "other similar crimes" for the purpose of rebutting the State's argument that " 'the degree of similarity between all of the crimes justifies admission' of other crimes evidence" and to show the possibility that another person

committed the charged offense.[1]  The trial court granted the State's motion to admit evidence of

Sakowska's murder to prove defendant's *modus operandi*, identification, intent, motive, and

propensity to commit aggravated criminal sexual assault.  The trial court denied defendant's

motion to admit evidence of two additional allegedly "similar crimes."  After the trial court's

rulings on the parties' motions related to other-crimes evidence, defendant moved to bar the use

of his conviction for Sakowska's murder for purposes of impeachment.  At the hearing on

defendant's motion the State argued, in part, as follows:

> "[A]ll [of defendant's] arguments [to bar evidence of the prior conviction]
>
> have been raised.  They raised those arguments in those cases that while since it's
>
> a similar offense, the jury is going to misconstrue or they are going to think he's
>
> guilty of that offense because he's got a [prior] for a similar offense.  And, Judge,
>
> in all those cases, the Court cited the fact that there was a limiting instruction.
>
> They jury is assumed to follow the instruction that they were given.
>
> And when this conviction comes in, Judge, it's coming in for
>
> impeachment, not to prove that he is guilty of the murder but to affect his
>
> credibility.
>
> Judge, one of the cases, and I think the case that is instructive in this case
>
> is the *Atkinson* case that I just cited.  In there it stated the language was

---

[1]    Defendant's attorney referred to the latter argument as "the alternative suspect argument *** also known as the Reverse 404(b) Rule."  Illinois Rule of Evidence 404(b) states as follows:
> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith except as provided by sections 115-7.3, 115-7.4, and 115-20 of the Code of Criminal Procedure (725 ILCS 5/115-7.3, 725 ILCS 5/115-7.4, and 725 ILCS 5/115-20). Such evidence may also be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011).

defendant's testimony at trial made up his entire defense. Defendant's credibility was, therefore, a central issue and the prior convictions were crucial in measuring the defendant's credibility. We have the same type of case right here.

You had the benefit of seeing the prior trial where that was his defense. The defendant testified that was his entire defense, and Judge, here we have the same thing, his credibility is crucial in this case to allow him to testify without his [prior] coming in is basically allowing the defendant to cast himself in a false light in front of the jury. So that they wouldn't even hear of this prior conviction and that's crucial in determining his credibility.

They have a limiting instruction that cures any prejudice that they are worried about. These prior arguments have been raised before and been rejected by the courts.

Judge, we ask that you deny their motion *in limine* allowing him to testify without his [prior] would cast him in a false light. Allowing him basically to try to deceive the jurors. I think they have a limiting instruction. It's vital to affect his credibility should he testify and that is his defense in this case."

The trial court denied defendant's motion. The court ruled as follows:

"[I]n this particular case *** the credibility of all witnesses in this case is a major component of what the jury will be viewing. The credibility, if he chooses to testify, [defendant,] will be in this Court's view having heard the other case, the lion's share of the defense case. *** [T]he Court recognized having heard this case as a proof of other crimes case, Ms. Sakowska's case, that the credibility of the defendant may well be the lynchpin to his defense. That being the case, the

- 4 -

> Court finds that the probative value of this [prior] *** if the defendant chooses to take the stand substantially outweighs any prejudicial effect of its admission. Obviously the proof of other crimes limiting instruction will go in, in addition to the limiting instruction on the prior conviction.
>
> *** [T]he *Montgomery* instruction that will caution the jury for the sole reason that that would be admitted is for purposes of the credibility of the defendant when he testifies."

¶ 7     The details of Sakowska's murder can be found in our disposition of defendant's appeal from that conviction. We will repeat them here only insofar is necessary to an understanding of the issues in this appeal. Regarding the facts leading to defendant's conviction for Ordidge's murder, the following was adduced at trial.

¶ 8     On October 21, 2006, the victim in this case, Janice Ordidge, had an appointment with Comcast Cable to repair her internet service. The assistant manager of Ordidge's building testified Ordidge asked her to buzz in the Comcast technician coming to repair her internet service. Ordidge's boyfriend at the time testified at defendant's trial that Ordidge called him around noon that day and told him the "cable guy" was in the basement. Ordidge's boyfriend testified she sounded "uneasy" so he asked her to call him back after the appointment. She never did.

¶ 9     When Ordidge did not show up for work the following Monday her sister asked the assistant manager to check Ordidge's apartment. The assistant manager testified she and the building engineer entered Ordidge's apartment where they found two windows open, a bike knocked over in the living room, and a nightstand and folded laundry knocked over in the bedroom. The assistant manager testified the apartment was really disheveled or messy.

Ordidge's sister learned that Ordidge's cell phone was last used around noon on Saturday, October 21, 2006. Ordidge's sister filed a missing person report.

¶ 10    After Ordidge's sister filed the missing person report the assistant manager at Ordidge's building called police to search the apartment. On October 23, 2006 police searched the apartment. One of the officers pulled back the shower curtain. Police discovered Ordidge's body submerged in her bathtub wearing only a pair of underwear. Blood-stained paper towels were stuffed in her underwear. A medical examiner testified that by the time the body was discovered Ordidge had been submerged in water for a long period of time and she had been dead for one to three days. The medical examiner testified Ordidge had extensive hemorrhaging to her eyes and neck and bite marks on her tongue both of which indicated she had been strangled. The medical examiner opined that the cause of death was manual strangulation.

¶ 11    A Chicago Police Department Forensic Investigator processed Ordidge's apartment. The forensic investigator testified there were no signs of forced entry to the apartment. Police recovered an "amplifying tool" in its case from a chair in the kitchen. Ordidge's bedroom was in complete disarray and the investigator discovered what he believed to be blood on the bedroom carpet. Chicago Police Department detectives assigned to Ordidge's murder testified they learned that Ordidge's iPod and two credit cards were missing from her apartment.

¶ 12    The owner of the contractor for Comcast Cable that handled Ordidge's service call testified defendant was the technician assigned to Ordidge's service call. The owner also testified that the tool police recovered in Ordidge's apartment after she was found strangled to death in her bathtub was a "cable toner" which their technicians are required to have to do their job. The work order defendant filled out for Ordidge's service call listed a start time of 9:40 a.m. and an end time of 10:20 a.m. However, the technicians use a two-way walkie-talkie radio to

activate the customers' modem or cable box and that system indicated that Ordidge's job was completed at 12:04 p.m. Comcast records indicated defendant completed Ordidge's call at 12:01 p.m. Ordidge's sister testified the signature on the work order defendant turned in for Ordidge's call was not Ordidge's signature. The cable company owner pulled defendant's work orders for that day. Defendant's relevant work orders list times of (1) 8:30 a.m. start, 9:00 a.m. end; (2) 9:20 a.m. start, 10:37 a.m. end; and (3) two customers with a noon start and different end times. One of the customers whose work order defendant turned in listing a noon start time for the appointment testified that defendant called her after 1:00 p.m. to tell her he was going to be late. Defendant arrived sometime later but this customer did sign the work order indicating defendant completed the job at 12:40 p.m. The other customer whose work order listed a noon start time testified the signature on her work order was not hers.

¶ 13    After detectives arrested defendant they went to his home to attempt to speak to his roommate but ended up speaking to a Mr. Johnson. Johnson testified that at the end of October 2006 or the beginning of November 2006 defendant sold Johnson an iPod for $50 that was later identified as Ordidge's missing iPod. Johnson testified defendant told Johnson that defendant received the iPod from one of his customers. Police were later able to speak to defendant's roommate and recovered some of defendant's clothing. Defendant's roommate also testified to seeing defendant with Ordidge's iPod.

¶ 14    A forensic expert for the State testified that she tested semen from oral swabs of Ordidge's mouth and defendant's DNA, and the expert concluded that defendant could not be excluded from having contributed to the DNA profile in the semen. DNA recovered from underneath Ordidge's fingernails on both hands matched defendant's DNA profile.

¶ 15    The other crimes evidence of Sakowska's murder included testimony by Sakowska's fiancé, forensic evidence related to Sakowska's murder, and testimony by other witnesses from Sakowska's case.  As it pertains to this appeal the evidence at defendant's trial for Ordidge's murder related to Sakowska's murder included testimony that on December 8, 2006, Sakowska had an appointment for Comcast to install internet in the home she shared with her fiancé. Defendant was the technician assigned to that service call.  Sakowska's body was found submerged in her bathtub.  Sakowska's body was completely unclothed, her head was wrapped in duct tape, she had bruises and abrasions on her forearm, right wrist, and right knee, and she had suffered a blunt trauma to her forehead.  Although Sakowska died of suffocation caused by the duct tape wrapped around her head the medical examiner testified at defendant's second trial that based on neck hemorrhages, strangulation contributed to Sakowska's death.

¶ 16    Forensic evidence related to Sakowska's murder presented at defendant's trial for Ordidge's murder included testimony that hairs recovered from a shirt seized from defendant's van were microscopically similar to Sakowska's hair and a DNA analysis of the hair could not exclude Sakowska as the source of the hair.  Sakowska's DNA was identified in a blood stain on defendant's jacket.  After Sakowska's body was discovered her fiancé told police items were missing from the home including two credit cards and his watch.  Police testified defendant was in possession of a watch Sakowska's fiancé identified as his missing watch and defendant's DNA was found on that watch.  Defendant's DNA profile matched a partial DNA profile identified from a hair on a towel in Sakowska's basement.  Oral swabs of Sakowska's mouth revealed the presence of semen and defendant could not be excluded as a contributor of the DNA profile identified from Sakowska's oral swabs.

¶ 17    Defendant testified on his own behalf.  Because the trial court granted the State's motion to admit other crimes evidence and denied defendant's motion to bar his prior murder conviction to impeach his credibility, before testifying defendant informed the trial court he would inform the jury of the prior conviction and that the conviction was for Sakowska's murder to prevent the jury from concluding there had been three murders (Ordidge's, Sakowska's—about which the jury would hear testimony—and a third murder of an unidentified victim if the jury was not informed defendant's conviction was for Sakowska's murder).  Defendant testified he met Ordidge downstairs as she was doing laundry.  Ordidge allegedly asked defendant about installing an illegal cable box called a "hot box."  Defendant testified another man was present in Ordidge's apartment and that Ordidge and that man had an argument.  Defendant testified Ordidge offered him her iPod as collateral for the illegal cable box which he claims to have installed underneath the television in her apartment but did not identify in photographs of the scene.  Defendant testified the man and Ordidge continued to argue until defendant ordered the man to leave, and he consoled Ordidge at which point she voluntarily performed oral sex on him although he admitted they had never met before that day.  Defendant admitted he was convicted of Sakowska's murder but denied killing her.

¶ 18    The jury found defendant guilty of Ordidge's murder.  The trial court sentenced defendant to natural life imprisonment.

¶ 19    This appeal followed.

¶ 20                                    ANALYSIS

¶ 21    Defendant's first argument on appeal is that the trial court erred in admitting his prior conviction for Sakowska's murder as impeachment evidence where defendant was on trial for an

identical crime and the trier of fact heard extensive testimony about the prior conviction as evidence of *modus operandi*. Illinois Rule of Evidence 609 provides as follows:

> "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the court determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." Ill. R. Evid. 609(a) (eff. Jan. 6, 2015).

Prior to the adoption of the Illinois Rules of Evidence, in *People v. Montgomery*, 47 Ill. 2d 510, 519 (1971), our supreme court held that Rule 609 of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, which is substantively identical to Illinois Rule of Evidence 609, should be followed in future cases. In *Montgomery* our supreme court held that the relevance, and thus the admissibility, of such evidence depends upon the assumption that one convicted of the crime at issue "is for that reason more likely than one who was not so convicted to testify falsely" in the current proceeding. *Id*. at 514. That is, the prior conviction must be probative of the issue of credibility. See *id*. at 518 ("There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility."), quoting *Luck v. United States*, 348 F.2d 763, 768 (D.C. Cir. 1965). Because the court found "no factual or psychological support for such an inference" (*id*. at 514), the trial court has the discretion to determine the admissibility of this kind of evidence (*id*. at 515). Under the rule our supreme

court adopted "the evidence of conviction [must] be excluded if the judge determines that its probative value is outweighed by the danger of unfair prejudice." *Id*. at 517. The judge must exercise that discretion within "the circumstances as they unfold in a particular case." *Id*., quoting *Luck*, 348 F.2d at 768. Our supreme court noted that the "application of *Luck* [had] been refined and clarified in numerous subsequent decisions." *Id*. at 518. Notably, to determine whether the prejudice from prior convictions " 'far outweigh[s]' the probative relevance to credibility *** various factors to be considered [are]: the nature of the crime, nearness or remoteness, the subsequent career of the person, and whether the crime was similar to the one charged." *Id*. at 518, citing *Gordon v. United States*, 383 F.2d 936, 939 (D.C. Cir. 1967), see also *People v. Mullins*, 242 Ill. 2d 1, 14 (2011). The *Mullins* court wrote as follows:

> "In *Montgomery*, this court held that evidence of a witness' prior conviction is admissible to attack the witness' credibility where: *** the probative value of admitting the prior conviction outweighs the danger of unfair prejudice. [Citation.] This last factor requires a trial judge to conduct a balancing test, weighing the prior conviction's probative value against its potential prejudice.

> [I]n performing this balancing test, the trial court should consider, *inter alia*, the nature of the prior conviction, the nearness or remoteness of that crime to the present charge, the subsequent career of the person, the length of the witness' criminal record, and whether the crime was similar to the one charged. [Citation.] If the trial court determines that the prejudice substantially outweighs the probative value of admitting the evidence, then the evidence of the prior conviction must be excluded. [Citation.]" *Mullins*, 242 Ill. 2d at 14-15.

¶ 22    "The determination of whether a witness' prior conviction is admissible for purposes of impeachment is within the sound discretion of the trial court." *Id*. at 15.  "A trial court abuses its discretion when it acts arbitrarily, without employing conscientious judgment, or exceeds the bounds of reason and ignores recognized principles of law resulting in a substantial prejudice to defendant." *People v. Melton*, 2013 IL App (1st) 060039, ¶ 18.

¶ 23    Initially, defendant asserts that as a general matter, crimes of violence have little or no bearing on honesty and veracity, and, therefore, "on the probative side of the balancing scale, [defendant's] prior murder conviction did not bear heavy weight."  In support of his argument his prior conviction had little probative value of his credibility, defendant cites *People v. Elliot*, 274 Ill. App. 3d 901, 909 (1995), in which the court wrote:

> "[T]he prior conviction must bear on the defendant's truthfulness as a witness. Crimes involving deceit, fraud, cheating, or stealing press heavily on the probative value side of the scale.  Crimes of violence, on the other hand, 'generally have little or no direct bearing on honesty and veracity.'  [Citations.] That is, if the trial court determines the prior conviction is a pure act of violence, and has no element of dishonest conduct, it should not be placed on the scale at all.  Whether crimes falling somewhere between these two distinct categories have sufficient probative value to be placed on the scale will depend on the nature and circumstances of the prior crime." *Elliot*, 274 Ill. App. 3d at 908-09.

However, the court subsequently held that "[a]ppellate decisions that indicate the nature of the prior conviction must bear on the witness's truthfulness before it can be considered for use as impeachment are trumped by [*People v. Frank Williams*, 173 Ill. 2d 48 (1996)] and [*People v. Atkinson*, 186 Ill. 2d 450, 461 (1999).]" *Stokes v. City of Chicago*, 333 Ill. App. 3d 272, 278-79

(2002). The nature of the conviction does matter, however, in performing the balancing test weighing the prior conviction's probative value against its potential prejudice. *Id*. at 279. "The more the prior conviction smacks of testimonial dishonesty, the more probative weight it has. [Citation.] Convictions involving deceit, fraud, cheating, or stealing are the kinds of crimes that 'press heavily on the probative value side of the scale.' " *Id*. at 279.

> "Trial judges are admonished not to apply the balancing test 'mechanically.' [Citation.] That is, 'trial courts should not tip the balancing test toward probative value simply because all felonies show a disrespect for society, and, thus, indicate a willingness to lie on the witness stand.' [Citation.] It must be a 'meaningful' balancing test. [Citation.]
>
> A slight tipping of the scales toward the risk of unfair prejudice is not enough to exclude the prior conviction. *** To exclude the evidence, the trial court must find the risk of unfair prejudice *substantially* outweighs the probative value of the conviction for impeachment purposes. [Citation.]" (Emphasis in original.) *Stokes*, 333 Ill. App. 3d at 279.

¶ 24 Therefore, in assessing whether the trial court abused its discretion in performing the *Montgomery* balancing test in this case, we must keep in mind how probative the crime at issue is of defendant's veracity.

¶ 25 We are guided by *People v. Eddie Williams*, 161 Ill. 2d 1, 38-39 (1994), wherein our supreme court engaged in an examination of "the origin and rationale of the *Montgomery* rule because a review of case law since *Montgomery* reveal[ed] a regression toward allowing the State to introduce evidence of virtually all types of felony convictions for the purported reason of impeaching a testifying defendant." In its examination the court noted that the *Montgomery*

court took notice of the then-proposed federal rule that was later adopted as Federal Rule of Evidence 609. *Id*. at 36. See also *supra*, ¶ 21. After reviewing and reaffirming the foundational principles of the *Montgomery* rule, our supreme court concluded: "In our view, the increasingly mechanical application of these premises does not comport with the principles expressed in *Montgomery*, or in the authorities on which the *Montgomery* court relied in adopting Rule 609 as the rule to be applied in this State." *Eddie Williams*, 161 Ill. 2d at 39. The court further noted:

> "Arguably, all criminal conduct, from the most serious felony to misdemeanors such as reckless or disorderly conduct, criminal trespass, resisting a peace officer, and numerous others, evinces a disrespect for society. The *Montgomery* rule does not, however, allow for the admission of evidence of any and all prior crimes. The focus of *Montgomery* was on crimes which bear upon the defendant's truthfulness as a witness." *Id*. at 39.

¶ 26    The *Eddie Williams* court noted the clarification and refinement of that rule provided by the *Gordon* court on two key points related to the application of the *Montgomery* rule: the types of prior convictions that "have genuine probative value on the issue of credibility" and the "special and more difficult problem [that] arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial." (Internal quotation marks omitted.) *Id*. at 37, citing *Gordon*, 383 F.2d at 940. Regarding the issue of the nature of the prior offense,

> "[w]riting for the *Gordon* court, then Circuit Judge Warren Burger reasoned that while some prior convictions can have genuine probative value on the issue of credibility, others, such as those which are remote in time and those which have no direct bearing on veracity, should be excluded. *** The court stated:

'*** In common human experience, acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity. A "rule of thumb" thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not.' *Gordon*, 383 F.2d at 940." *Eddie Williams*, 161 Ill. 2d at 37.

¶ 27 In *Eddie Williams*, the defendant was on trial for first degree murder and the trial court admitted evidence of the defendant's prior conviction for a similar offense—voluntary manslaughter—as impeachment evidence. *Id*. at 40. "The prosecutor's entire argument in support of admission of the evidence was that '[the] defendant's criminal history is relevant. As to the voluntary manslaughter conviction, it's a felony conviction.' " *Id*. Our supreme court found that the record indicated that the trial court in that case had admitted evidence of the defendant's prior conviction as being probative of the defendant's guilt of the charged offense rather than as bearing upon the defendant's credibility as a witness. *Id*. The court noted that the State "provided *** no insight as to the relation between the conviction and [the] defendant's testimonial credibility." *Id*. at 41. The State attempted to rely on "the previously discussed argument that the conviction evinced a disrespect for societal order and thus adversely affected [the] defendant's veracity." *Id*. Our supreme court "fail[ed] to see the relationship required by *Montgomery* between [the] defendant's conviction and his testimonial credibility in [that] case." *Id*. Rather, from the record "it clearly appear[ed] that the conviction was offered and admitted as

relevant to the question of [the] defendant's guilt." *Id*. The court held that "[u]nder the rationale

of *Montgomery*, evidence of [the] defendant's conviction of voluntary manslaughter should not

have been admitted at trial." *Id*. Nonetheless, the court found the admission "could not have

been a material factor in his conviction such that without the evidence the verdict likely would

have been different." *Id*. at 42.

¶ 28      In this case, defendant also argues the fact he was on trial for the same offense as the

prior conviction used to impeach him by itself "increased the risk that the jury would draw an

improper inference from the conviction, namely that [defendant] must likewise be guilty of the

charged murder in this case" and thus the trial court "abused its discretion by permitting

impeachment with a conviction for the identical offense for which [defendant] was being tried."

Defendant argues the prejudice to him was overwhelming and far outweighed any probative

value the murder conviction may have had. See *People v. Adams*, 281 Ill. App. 3d 339, 345

(1996) ("The defendant in the instant case was charged, *inter alia*, with aggravated battery. In

our view, the probative value relating to credibility was minimal by comparison with the

prejudice due to the admission of the prior aggravated battery convictions.").

¶ 29      Turning again to *Eddie Williams*, we note that as for the latter issue of the similarity of

the prior offense, the *Gordon* court stated:

>          "Where multiple convictions of various kinds can be shown, strong
>
>          reasons arise for excluding those which are for the same crime because of the
>
>          inevitable pressure on lay jurors to believe that 'if he did it before he probably did
>
>          so this time.' As a general guide, those convictions which are for the same crime
>
>          should be admitted sparingly ***. *Gordon*, 383 F.2d at 940." (Internal quotation
>
>          marks omitted.) *Eddie Williams*, 161 Ill. 2d at 37-38.

This court has also stated that "[c]onvictions of the same crime for which the defendant is on trial should be admitted 'sparingly'." *Stokes*, 333 Ill. App. 3d at 280, citing *People v. Cox*, 195 Ill. 2d 378, 384 (2001). "Nonetheless, similarity alone does not mandate exclusion of the prior conviction." *People v. Atkinson*, 186 Ill. 2d 450, 463 (1999), citing *People v. Redd*, 135 Ill. 2d 252, 326 (1990).

¶ 30    Therefore, in assessing whether the trial court abused its discretion in performing the *Montgomery* balancing test in this case, we must also keep in mind how prejudicial the crime at issue is to defendant and whether it is unfairly prejudicial.

¶ 31    Since *Eddie Williams*, in making the aforementioned assessments this court has focused on whether the record "makes clear that the trial judge was applying the *Montgomery* standard" (*People v. Frank Williams*, 173 Ill. 2d 48, 83 (1996)). See, *e.g.*, *People v. James Williams*, 2015 IL App (1st) 130097, ¶ 49 ("In light of the trial court's comments, we cannot accept defendant's contention that the court failed to weigh the probative value of admitting his prior convictions as impeachment evidence against its possible prejudicial effect. It is clear that the court applied conscientious judgment and did not act arbitrarily in making its decision; we therefore find that the trial court conducted a proper balancing test and thereby adhered to the *Montgomery* rule."); *People v. Neely*, 2013 IL App (1st) 120043, ¶ 20 ("there is no indication in the record that the trial court did not properly perform the balancing test"); *People v. Harden*, 2011 IL App (1st) 092309, ¶ 47 ("Although the trial court here did not articulate how it balanced the probative value of the prior conviction with the prejudicial effect, 'there is no reason to suppose that [it] disregarded the familiar, well-established *Montgomery* standard.' [Citation.] The trial court did not abuse its discretion in allowing the State to use Harden's prior drug conviction to impeach his credibility.").

¶ 32     Our supreme court in *Eddie Williams* placed the burden on the State to demonstrate the relationship between the prior conviction and the defendant's testimonial credibility to demonstrate the probative value of such evidence that would allow the trial court to properly conduct the *Montgomery* balancing test. *Eddie Williams*, 161 Ill. 2d at 41. "Then, the burden of persuasion to demonstrate that the prejudicial effect of such evidence substantially outweighs its probative value falls to the party seeking its exclusion. [Citation.]" (Internal quotation marks omitted.) *People v. Elliot*, 274 Ill. App. 3d 901, 912 (1995), abrogated by *Stokes v. City of Chicago*, 333 Ill. App. 3d 272, 278-79. Regarding the counterbalancing prejudicial effect of, specifically, a prior conviction for the same or similar offense to the charged offense, our supreme court has similarly relied on record evidence that the trial court applied the *Montgomery* standard. In *Frank Williams*, our supreme court allowed a defendant on trial for murder and aggravated battery with a firearm to be impeached with a prior conviction for aggravated battery. *Frank Williams*, 173 Ill. 2d at 83. The defendant argued the "evidence was highly prejudicial because it suggested to the jury that [the] defendant had a propensity for violent criminal behavior." *Id*. at 80-81. The court found no error because there was "no reason to suppose that [the trial judge] disregarded the familiar, well-established *Montgomery* standard in determining that the impeachment was proper." *Id*. at 83.

¶ 33     Another important factor courts have relied on is the presence of an instruction to the jury. *People v. Mullins*, 242 Ill. 2d 1, 16 (2011) ("Although 'trial courts should be cautious in admitting prior convictions for the same crime as the crime charged,' *Atkinson* stressed that 'similarity alone does not mandate exclusion of the prior conviction.' [Citation.] This is especially so when the jury is instructed to consider the evidence of the defendant's prior convictions for the limited purpose of impeachment, which ensures that the jurors understood the

narrow reason for which the convictions were admitted. [Citation.]"), citing *Atkinson*, 186 Ill. 2d at 463. See also *People v. Clay*, 379 Ill. App. 3d 470, 477-78 (2008), citing *Frank Williams*, 173 Ill. 2d at 82-83. In *Clay*, the defendant argued the trial court's statements in admitting his prior conviction indicated "the trial court found the prior murder conviction probative of [the] defendant's murderous propensity, not his credibility." *Clay*, 379 Ill. App. 3d at 477. The *Clay* court stated it "might agree if the trial court had not said the jury would 'be instructed to only consider that information as it may impact his credibility and not to consider it as evidence for the charge for which he is accused.' " *Id*.

¶ 34 Despite its reliance on the presence of the instruction to the jury the *Clay* court found it "important to note, however, that whether the use of the instruction under these circumstances actually eliminates the risk of misuse is a matter open to question. Several studies indicate 'jurors use evidence regarding convictions as an indicator of guilt rather than to determine the credibility of statements made by the defendant, despite judicial instructions to the contrary.' [Citations.]" *Id*. at 478. The *Clay* court also stated it would not "discount [the] defendant's claim that the prior murder conviction has little to do with '[the] defendant's truthfulness as a witness' [citation]" or "minimize the great risk that a murder trial jury would misuse a prior murder conviction as proof of the defendant's propensity to commit that crime." *Id*. Regardless, the court held that "considering the strength of the State's case and the binding authority of [*Frank*] *Williams*, we are unable to say the trial court abused its discretion when it allowed the use of the prior murder conviction to impeach the defendant's credibility." *Id*.

¶ 35 Defendant argues the prejudice in this case was heightened because not only did the State present evidence of the prior conviction, the State presented "virtually all of the evidence [it] had presented in support of that prior conviction" as other crimes evidence. Defendant also argues

that admitting evidence that defendant was convicted of the crime about which the jury heard "other crimes evidence" only served to "unfairly bolster the State's *modus operandi* argument." Defendant argues that under the circumstances, "the jury could not reasonably be expected to limit its consideration of [defendant's] conviction to evaluate his credibility" and created "an enormous risk that the jury would be persuaded to likewise find him guilty in the present case." Thus, defendant argues, the prejudicial effect of the prior conviction "greatly outweighed" its probative value and it should not have been admitted.

¶ 36    The State responds the trial court conducted the balancing test required by *Montgomery* and properly instructed the jury on the limited use of the prior conviction, and the court's finding that the probative value of the prior conviction outweighed any prejudicial effect was not an abuse of discretion where "defendant's credibility was the linchpin of his defense."  See *People v. James Williams*, 2015 IL App (1st) 130097, ¶ 52 ("[t]he prejudicial effect of admitting similar or identical offenses is diminished where *** the jury receives a limiting instruction on its use of the earlier conviction.  [Citations.]"); *Atkinson*, 186 Ill. 2d at 461-62 ("Defendant's credibility was therefore a central issue, and the prior convictions were crucial in measuring defendant's credibility.")  The State also argues defendant failed to cite any authority for the proposition that "prejudice in admitting the prior conviction [is] somehow increased because other crimes evidence [of the same prior conviction is] properly admitted."

¶ 37    The issues raised by defendant's arguments in this appeal involve the probative value of a crime of violence on the question of veracity, the prejudicial effect of admitting evidence of a prior conviction for the identical crime for which the defendant is charged, and the impact of voluminous evidence of the prior conviction on the *Montgomery* balancing test.  To resolve the question presented by the intersection of these issues we find instructive *People v. McCoy*, 2016

IL App (1st) 130988. In *McCoy*, 2016 IL App (1st) 130988, ¶ 4, the State charged the defendant with first degree murder. At the defendant's trial the State impeached the defendant's credibility with a prior attempt first-degree murder conviction. *McCoy*, 2016 IL App (1st) 130988, ¶ 9. On appeal, the defendant argued the admission of the prior murder conviction relieved the State of the need to explain its theory of the crime because "after the jury heard he had tried to kill somebody else, 'the present case simply became a case in which [the] [defendant] succeeded in what he had previously attempted to do.' " *Id*. ¶ 63. The defendant also argued "he was further prejudiced by the admission of his conviction because the State repeatedly reminded the jury of the conviction during closing argument." *Id*. The *McCoy* court held the trial court "abused its discretion by admitting the prior attempted murder conviction and allowing the State to emphasize that conviction repeatedly during closing argument."

¶ 38    The *McCoy* court found that "the prejudicial effect of [the defendant's] attempted murder conviction outweighed its probative value, particularly in light of the State's comments during closing argument." *Id*. ¶ 66.[2] The court began by noting that "[the] defendant's prior conviction

---

[2]    "Following the presentation of evidence, the matter proceeded to closing arguments. During its argument in rebuttal, the State made the following assertion:

> 'You're going to get an instruction and [defense counsel] covered it in his closing, evidence of a defendant's previous conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged.

> And I agree with [defense counsel]. What that means is when you go back there, you heard he is a convicted felon. A convicted felony [*sic*] for attempted murder. You can't go back to that jury room—what the instruction says, you can't go back to that jury room and say well, he is a bad guy, he committed that back then so he must have committed it this time. You can't do that.

for attempted murder was nearly identical to the murder charge for which he was on trial." *Id*.

The court acknowledged the rules that "similarity alone does not mandate exclusion of the prior

conviction and that our supreme court "has found no abuse of discretion even when the trial

court admits a prior conviction for the same crime for which the defendant is on trial." *Id*.

Nonetheless, the *McCoy* court pointed out that "our supreme court has also stated that trial courts

should be cautions in admitting prior convictions for the same crime as the crime charged." *Id*.,

citing *Atkinson*, 186 Ill. 2d at 463. The court further noted that "the State's comments ***

encouraged the jury to focus on [the] defendant's prior conviction rather than the facts of the

case." *Id*. ¶ 67.

¶ 39   The *McCoy* court was guided by the court's previous decision in *People v. Pruitt*, 165 Ill.

App. 3d 947 (1988). *Id*. After reviewing *Pruitt*, the *McCoy* court concluded that "[a]s in *Pruitt*

*** the State repeatedly emphasized [the] defendant's prior conviction during closing

argument." *Id*. ¶ 70. The court found that "[b]y repeating that defendant was a convicted felon

and by emphasizing that this conviction was for attempted murder, the State's comments actually

encouraged the jury to focus on that prior attempted murder conviction rather than the facts of

---

> What you can do and what you should do and what this law says, it affects his credibility. You go back there and you say well, he is a convicted felon. He is a convicted felon of attempted murder.
>
> Convicted felons are not believable. They will tell you anything to get away with it, to try and get away with it. That's what felons do. That's why this law exists, because it does affect their credibility.
>
> So he is an admitted liar. His credibility is affected by the fact that he's a convicted felon with an attempt murder conviction.'

Later, the State also asserted that defendant was "a liar, admitted liar, proven liar. Can't believe him because of his convicted felony." *McCoy*, 2016 IL App (1st) 130988, ¶ 46.

the case and convict the defendant on the basis of his prior conviction instead of the evidence presented at trial." *Id.* The *McCoy* court found that "the State's comments here 'created an inevitable pressure on the jurors to believe that if defendant' committed attempted murder in the past, he probably committed murder in this case." *Id.*, quoting *Pruitt*, 165 Ill. App. 3d at 953. Accordingly, the court held "the prejudicial effect of the admission of [the] defendant's prior conviction outweighed its probative value and that the admission of that conviction amounted to reversible error. *Id.* ¶ 70.

¶ 40    In *Pruitt*, the court held the trial court abused its discretion in "admitting into evidence [the] defendant's prior convictions and in allowing the State to emphasize those convictions in its closing argument." *Pruitt*, 165 Ill. App. 3d at 948. The defendant in that case argued "the prejudicial effect of the admission of his prior convictions and the sentence he received was 'magnified' by the State's subsequent comments concerning the prior convictions during closing argument." *Id.* at 951.[3] The *Pruitt* court noted that the defendant's trial came down to a

---

[3]    "Specifically, the State commented:
    'Well, Judge Crilly has another instruction for you which I would like to read. Evidence of a defendant's previous conviction of an offense may be considered by you only insofar as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged. Basically what that is saying is the fact that he is a convicted felon, the fact that he is a convicted rapist, armed robber, kidnaper [*sic*] and practitioner of deviate sexual assault—

    [Y]ou should not consider that for the purpose of saying well he did it before therefore he must have done it. You can't use that. You can't use that conviction for that purpose, but you certainly can use that conviction—

    But, ask yourselves this question, would a person who commits those kinds of crimes—

credibility contest between the defendant and the complainant. *Id*. at 952. The court also noted the prior conviction was the same as the crime with which the defendant was charged and that another of the current charges and a factual allegation in the charged case corresponded closely with other prior convictions admitted at the trial on the current charge. *Id*. In light of those circumstances, the *Pruitt* court held as follows:

> "We believe under the circumstances that admission of these prior convictions clearly created an inevitable pressure on the jurors to believe that if defendant committed these crimes before he probably did so this time, notwithstanding the State's admonishment to the contrary. In fact, we are of the opinion that by the State's admonishment to the jury, that defendant's prior convictions were only to be considered for impeachment purposes, the State caused the jury to focus its attention on the prior convictions and the probability that he had once again committed the crimes with which he was charged. In effect, admission of defendant's past convictions rose to the level of proof to show defendant's propensity to commit a crime ([citation]) or similar crimes which is highly improper. The result was not only to conceivably inflame the jury's passions, but also to cause a search for the truth based upon defendant's prior convictions rather than solely on the facts of the case and the credibility of the witnesses. Accordingly, we hold that the prejudicial effect of admission of defendant's prior convictions discussed herein outweighed their probative value

He swears to tell the truth. Does that mean anything to this man, an accomplished liar [*sic*]. A man like Ralph Pruitt lies for the sake of lying. He practices lies for the time that he needs them like right now.' " *Pruitt*, 165 Ill. App. 3d at 951.

on the issue of defendant's credibility and it was reversible error for the trial court to admit them into evidence." *Id*. at 953.

¶ 41    In this case the record does reflect that the trial court was aware of and stated that it applied the *Montgomery* balancing test and the jury was properly instructed on the limited use of the prior conviction evidence. See, *e.g.*, *Clay*, 379 Ill. App. 3d at 477. Nonetheless, in this case, we find the prejudicial effect of admitting defendant's prior conviction for Sakowska's murder substantially outweighed the probative value of that conviction. We reject the State's and the trial court's position that the admission of the other crimes evidence of Sakowska's murder is immaterial to this determination. The circumstances which caused additional prejudice are more damaging in this case than in either *Pruitt* or *McCoy*. In both *Pruitt* and *McCoy*, the State merely focused on the prior convictions during closing arguments. In this case, the jury was subjected to a "trial within a trial" of defendant's prior conviction for Sakowska's murder.[4] Here, the voluminous evidence of Sakowska's murder, though properly admitted, "encouraged the jury to focus on that prior *** murder conviction rather than the facts of the case and convict *** defendant on the basis of his prior conviction instead of the evidence presented at trial." *McCoy*, 2016 IL App (1st) 130988, ¶ 70, quoting *Pruitt*, 165 Ill. App. 3d at 953.

¶ 42    Further, the prior conviction itself was of minimal probative value as to defendant's credibility. See *Eddie Williams*, 161 Ill. 2d at 37, citing *Gordon*, 383 F.2d at 940. We also believe this holding is in keeping with the spirit and intent of the rule allowing impeachment with a prior conviction that is probative of the witness's credibility. See *United States v.*

---

[4]    "When admitting other-crimes evidence, we often warn trial courts not to allow a 'mini-trial' on the other crime, since that could confuse the jury and waste time. [Citation.]" *People v. Rosado*, 2017 IL App (1st) 143741, ¶ 36.

*Robinson*, 8 F.3d 398, 409 (7th Cir. 1993) ("The [defendant's] examination must be limited to whether the defendant had previously been convicted of a felony, to what that felony was and to when the conviction was obtained. [Citation.] In short, the cross-examination should be restricted to the fact of the convictions, and the circumstances and details of prior criminal conduct should not be explored by the prosecutor. [Citations.]"); and *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) ("The scope of the inquiry is limited because of the unfair prejudice and confusion that could result from eliciting details of the prior crime. *Robinson*, 8 F.3d 398, 410 (7th Cir. 1993) (holding that the impeaching party is not 'entitled to harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case') (internal quotations marks omitted)").

¶ 43    Accordingly, we hold that the admission of defendant's prior conviction under the particular facts of this case was error.

¶ 44    An error of this type requires reversal if "it was so prejudicial as to have denied [the] defendant a fair trial." *Eddie Williams*, 161 Ill. 2d at 41. The defendant is denied a fair trial where the improperly admitted prior conviction was "a material factor in [the] conviction such that without the evidence the verdict likely would have been different." *Id*. at 42. Where the trial court improperly admits a prior conviction for purposes of impeachment "a reviewing court may uphold [the] defendant's conviction where the evidence at trial indicates that the verdict likely would not have been different without the evidence of [the] defendant's prior conviction." *People v. Lyons*, 315 Ill. App. 3d 959, 964 (2000). In this case, we cannot say that the admission of defendant's prior conviction for Sakowska's murder denied him a fair trial because that evidence was not a material factor in his conviction beyond a reasonable doubt. See *People v.*

*Colon*, 162 Ill. 2d 23, 32 (1994) ("a reviewing court will not hold that an error is harmless unless the court is satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction"). Defendant does not challenge the admissibility of the other-crimes evidence of Sakowska's murder to show *modus operandi*. Thus, the jury properly heard evidence about the nearly identical nature of a prior murder implicating defendant (regardless of whether or not that murder resulted in a conviction) and the charged offense in this case. The jury also heard direct and circumstantial evidence placing defendant at the crime and scientific evidence that defendant was the person who actually killed Ordidge because it was defendant's DNA that was found in her body. In light of the overwhelming evidence of defendant's guilt, we believe the verdict would not have been different without the evidence of defendant's prior conviction.

¶ 45    Next defendant argues the trial court erred in excluding evidence of two additional crimes involving murder victims found in their homes in the bathtub to rebut the State's *modus operandi* theory. Defendant argues this evidence was admissible to show someone else may have committed the crime in this case. Illinois Rule of Evidence 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith ***. Such evidence may also be admissible for other purposes, such as proof of *** identity ***." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). "*Modus operandi* acts as circumstantial evidence of identity on the theory that crimes committed in a similar manner indicate that they were committed by the same offender. [Citations.]" *People v. Littleton*, 2014 IL App (1st) 121950, ¶ 44. A defendant may introduce other-crimes evidence to exculpate himself or herself by showing that another person committed the charged offense. *People v. Cruz*, 162 Ill. 2d 314, 350 (1994); *People v. Tate*, 87 Ill. 2d 134, 141 (1681). "[W]here a

defendant seeks to introduce other-crimes evidence to exculpate himself, there is usually no need for the trial court to be concerned with balancing probative value against prejudicial effect." *Cruz*, 162 Ill. 2d at 350.

> "The offenses must share such distinctive common features as to earmark both acts as the handiwork of the same person. [Citation.] The degree of similarity required to introduce other-crime evidence under the *modus-operandi* or common-design exceptions is higher than for any of the other exceptions. [Citations.] Nevertheless, some dissimilarities between the offenses does not mean that a *modus operandi* cannot be shown. [Citation.]" *People v. Clark*, 2015 IL App (1st) 131678, ¶ 53.

"The admissibility of other-crimes evidence rests within the sound discretion of the trial court, and its decision on the matter will not be disturbed absent a clear abuse of discretion." *People v. Wilson*, 214 Ill. 2d 127, 136 (2005). Defendant suggests we should review the trial court's ruling *de novo* because whether a defendant's constitutional right to present a defense was violated presents a purely legal issue involving uncontested facts. However, this court has held that "when a party claims he was denied his constitutional right to present a complete defense due to improper evidentiary rulings, the standard of review is abuse of discretion." *People v. Burgess*, 2015 IL App (1st) 130657, ¶ 133.

¶ 46    The State argues the trial court properly excluded evidence of two other murders involving victims found in the bathtub in their own home as "so factually dissimilar from the Ordidge/Sakowska cases" as to not satisfy the degree of similarity required to introduce other-crimes evidence under the *modus operandi* exception. Defendant sought to introduce evidence of the murders of Connie Brown and Maryia Udabichenka to show that someone else committed

the Sakowska and Ordidge murders.  Udabichenka was found dead in her bathtub about six weeks before Ordidge's death.  When she was found Udabichenka was wearing a sleeveless white t-shirt and black underwear, and she had a small piece of tape near her knee.  Udabichenka died of multiple stab wounds.  Police requested defendant's DNA be compared to evidence recovered in Udabichenka's case, but defendant was excluded as a contributor.  Brown was also found murdered in the bathtub in her apartment.  Brown died from strangulation and was naked from the waist up when discovered.  Police listed Brown's murder as similar to Sakowska's and Ordidge's murders.

¶ 47     The State describes the Sakowska and Ordidge murders as follows: both occurred on the south side of Chicago along defendant's Comcast cable route, Sakowska and Ordidge both had cable appointments and defendant was the assigned technician, Sakowska and Ordidge both suffered strangulation, and semen was recovered from both Sakowska's and Ordidge's mouths.  Additionally, items were taken from their homes and a window was left open in both Sakowska's and Ordidge's murders.  The State notes the following differences in the murders of Brown and Udabichenka:  Brown and Udabichenka were murdered on the north side of the city, Brown and Udabichenka did not have cable appointments, the bathtubs in which Brown and Udabichenka were found were dry.  Brown was strangled but Udabichenka died from multiple stab wounds.  Semen was recovered from Udabichenka's mouth (defendant was excluded as a donor) but no semen was recovered from Brown's mouth.  Additionally, no items were taken from Brown's or Udabichenka's homes and no windows were left open.

¶ 48     Defendant argues the trial court's ruling was erroneous "because the character of the unsolved crimes, as a whole, were sufficiently similar to the charged crimes to warrant admission."  Specifically, defendant argues that "[l]ike the victims in the two unsolved crimes,

Ordidge and Sakowska were both women who were found at home, in their bathtubs. All four victims were found naked or partially clothed. *Thus, the general characteristics of these homicides, as a whole, were nearly identical.* Further, the piece of tape found near Udabichenka's knee recalls the duct tape used on Sakowska's body \*\*\*. And the cause of Brown's death—strangulation—was involved in the death of both Ordidge and Sakowska." (Emphasis added.) Defendant further notes that Udabichenka's homicide was close in time to the charged cases. Defendant also argues "the Ordidge and Sakowska homicides themselves have critical differences and yet were deemed similar enough by the trial court to support a *modus operandi* theory of admission."

¶ 49     Defendant relied, in part, on our supreme court's decision in *Cruz*, and asserted that in *Cruz*, "[i]n comparing the other crimes, the court looked not to the 'discrete and observable facts,' but rather 'the character of the assaults as a whole.' " Defendant's reliance on *Cruz* as standing for the proposition that the court should look to "the character of the unsolved crimes, as a whole" to determine whether they are sufficiently similar is misplaced. In *Cruz*, our supreme court specifically stated that "[i]n cases where evidence of other crimes is offered \*\*\* to established *modus operandi* or a common design or plan, a 'high degree of identity' between the facts of the crime charged and the other offense has been required." *Cruz*, 162 Ill. 2d at 349. The court explained: "This high degree of identity between the other offense and the charged crime is necessary because *modus operandi* refers to a pattern of criminal behavior so distinctive that separate crimes are recognized as the handiwork of the same wrongdoer." *Id*. However, "[t]his court has also recognized that even where such evidence is offered to prove *modus operandi* some dissimilarity will always exist between independent crimes. [Citation.]" (Internal quotation marks omitted.) *Id*. The *Cruz* court went on to state that this "same degree of

identity between the two offenses is not necessary when evidence of the other crime is offered for some purpose other than *modus operandi*." *Id*. For example, "mere general areas of similarity have sufficed" when other crimes evidence was offered to prove the absence of an innocent frame of mind or the presence of criminal intent. *Id*. at 349-50. Moreover, the court expressly "disagree[d] with [the] defendant's assertion that *Tate* allows for a relaxed degree of identity between the crimes compared when other-crimes evidence is offered by a defendant." *Id*. at 351.

¶ 50    In *Cruz*, the defendant sought to introduce evidence of other crimes committed by a nontestifying third-party; specifically, the third-party's confession to the offense the defendant was charged with and other similar crimes to which the third party contemporaneously confessed. *Id*. at 340-41. The trial court admitted the third party's confession to the charged offense but ruled evidence of the other admitted crimes was inadmissible under a theory of *modus operandi*. *Id*. at 341. On appeal, our supreme court found the confession to the charged offense was properly admitted. *Id*. at 347. The court also found that only one of the other admitted offenses was admissible under a theory of *modus operandi* because "a 'substantial and meaningful' linkage was established between" that offense and the offense to which the third party confessed such that evidence of the other murder was probative of the truth of the confession. *Id*. at 351. Regarding the remaining other crimes allegedly involving the third party our supreme court held "there was not a sufficient linkage among [them] to support admission of them all under a theory of *modus operandi*." *Id*. at 351-52. However, the court found "there was a sufficient degree of similarity to support their entire admission for purposes *other than to show modus operandi*." (Emphasis added.) *Id*. at 352. After describing the similarities in the offenses the court found as follows:

"Although each crime does not bear the same similar feature, various similar features are repeated. The greatest similarity between these crimes, however, lies not in discrete and observable facts, *but in the character of the assaults as a whole*. [Citation.] The crimes appear unpremeditated, highly spontaneous, and reckless in their regard to possible apprehension." (Emphasis added.) *Id*. at 352.

The court found the "requisite degree of similarity" was established to admit the remaining other crimes evidence "to corroborate" the third party's confession to the offense charged against the defendant. *Id*. Our supreme court found the excluded other crimes evidence was admissible for another reason. The State attempted to show joint participation by the defendant and the third party. *Id*. at 354. The defendant "attempted to demonstrate the implausibility of this theory by introducing [the third party's] other crimes, revealing that [he] invariably acted alone in committing similar crimes." *Id*. The court held the "probative value of this evidence depends not on any heightened degree of identity between the crimes compared, as is the case in *modus operandi*, but on the consistency of [the third party's] solitary conduct in similar situations." *Id*. at 355. The court held the evidence was admissible. *Id*.

¶ 51    In this case, defendant does not argue the evidence the trial court excluded is relevant to any other issue other than the *modus operandi* of the four murders at issue. On the sole basis of admitting the excluded evidence as evidence of the *modus operandi* of a single offender in all four crimes, we cannot say the trial court abused its discretion in excluding the evidence. "[A] separate offense is found to be relevant and admissible as proof of *modus operandi* only upon a strong and persuasive showing of similarity." *Tate*, 87 Ill. 2d at 141. Similarity sufficient to satisfy this standard will be found where there are "distinctive features to serve as a link between the two offenses, such as using similar weapons, dressing the same, acting with the same number

of people, or even a distinctive method of committing this particular offense. Although the similarities need not be unique only to the two offenses being compared, there must be present some distinctive features that are not common to most offenses of that type in order to demonstrate *modus operandi*." *Id*. at 142-43. The Sakowska and Ordidge murders shared a distinctive feature in that both were facilitated by the fact they had a cable appointment. That same distinctive feature is not present in the Brown and Udabichenka murders. While Brown was strangled, she was not sexually assaulted in the same manner as the other victims. Moreover, a murder by strangulation is not uncommon. See *id*. at 142. The Brown murder is missing a significant common factor that the Sakowska and Ordidge murders share. Similarly, while Udabichenka was sexually abused in the same manner, she was not strangled but was stabbed to death; thus, the Udabichenka murder also lacks a substantial common factor connecting it to the Sakowska and Ordidge murders.

¶ 52   We reject defendant's argument the trial court erred in excluding evidence of the Brown and Udabichenka murders because "the State was afforded a certain margin of dissimilarity in its other crimes evidence, [thus] the defense was entitled to the same standard when considering the admissibility of its own other crimes evidence." First, our supreme court has recognized that "some dissimilarity will always exist between independent crimes." (Internal quotation marks omitted.) *Robinson*, 167 Ill. 2d at 65. The distinctions between the Sakowska and Ordidge murders were not sufficient to overcome the "strong and persuasive showing of similarity" between those offenses. *Tate*, 87 Ill. 2d at 141. Second, in support of that argument defendant cites *Wilson v. Firkus*, 457 F. Supp. 2d 865, 888 (N.D. Ill. 2006), but his reliance is misplaced.

¶ 53   In *Wilson*, the petitioner filed a petition for writ of *habeas corpus* "claiming that [he] was denied his right to present a defense under the Sixth Amendment when the state court excluded

evidence that someone else committed the crime with which he was charged." *Wilson*, 457 F. Supp. 2d at 869. The court held that "to the extent the state court *** was applying a rule that altered the ordinary relevancy rules in the case of third-party exculpatory evidence, such a rule would not be constitutionally permissible." *Wilson*, 457 F. Supp. 2d at 886. In that case, the state court had found that other crimes evidence "did not satisfy the state's 'close connection' standard for introduction of third-party culpability evidence." The *habeas corpus* court found that "[u]pon review, it is unclear from the record what sort of 'connection' the [state] court found lacking." *Id*. at 886. The court then detailed the similarities between the offenses. See *id*. at 886-87. The court found that the existence of one dissimilarity between the offenses was "not the standard for admissibility" because the Illinois supreme court had "never held *** that other crimes must be identical to the crime charged before evidence of them is admissible." *Id*. at 887, citing *People v. Taylor*, 101 Ill. 2d 508, 521 (1984).

¶ 54    In *Taylor*, our supreme court found that while some differences existed between the crimes at issue in that case there were also "a number of substantial similarities." *Taylor*, 101 Ill. 2d at 521. We find that *Wilson* merely represents an application of long-standing Illinois law to the facts of that case. Despite his unsupported assertion that the trial court "applied a demonstrable unequal standard when determining the level of similarity necessary for admission," defendant has failed to demonstrate that he was held to a higher standard of similarity in part because he relies on an incorrect standard. See *Cruz*, 162 Ill. 2d at 352. The fact that other crimes need not be identical to satisfy the similarity requirement for the admission of *modus operandi* evidence does not mean that *modus operandi* evidence offered by the defense does not have to satisfy the threshold similarity requirement. As noted above, our supreme court has expressly rejected the argument that Illinois law "allows for a relaxed degree of identity

- 34 -

between the crimes compared when other-crimes evidence is offered by a defendant." *Cruz*, 162 Ill. 2d at 351. "[F]or such evidence to have significant probative value under *modus operandi*, there must be a substantial and meaningful link between the offenses *** regardless of which party offers the evidence." *Id*. The issue in this case is not that defendant was not "afforded a certain margin of dissimilarity in [his] other crimes evidence;" the issue was that defendant's evidence went outside the margins.

¶ 55    "The degree of similarity required to introduce other-crime evidence under the *modus operandi* or common-design exceptions is higher than for any of the other exceptions." (Internal quotation marks and citation omitted.) *People v. Smith*, 2019 IL App (4th) 160641, ¶ 62. "Between the offense offered to prove *modus operandi* and the offense charged, there must be a clear connection which creates a logical inference that, if defendant committed the former offense, he also committed the latter. [Citation.] This inference arises when both crimes share peculiar and distinctive features not shared by most offenses of the same type and which, therefore, earmark the offenses as one person's handiwork. [Citation.]" (Internal quotation marks omitted.) *People v. Richee*, 355 Ill. App. 3d 43, 51 (2005). In this case, there is no "substantial and meaningful link" between the Sakowska and Ordidge murders and the Brown and Udabichenka murders to support "an inference that a distinctive pattern of criminal activity earmarks the crimes as the work of a particular individual." *Robinson*, 167 Ill. 2d at 65. The trial court did not abuse its discretion in excluding defendant's proffered evidence. We affirm the decision of the trial court.

¶ 56                                CONCLUSION

¶ 57    For the foregoing reasons, the circuit court of Cook County is affirmed.

¶ 58    Affirmed.